## NEWSOM v. SOCIAL SECURITY BOARD.

### No. 5342.

District Court, E. D. Michigan, S. D.

March 5, 1947.

Frank J. Starkey, of Mt. Clemens, Mich., for plaintiff.

John C. Lehr, U. S. Atty., and Morris Zwerdling, Ass't U. S. Atty., both of Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

This is an action to review the final decision of the Social Security Board denying to plaintiff continued widow's current insurance benefits under the Social Security Act, 42 U.S.C.A. § 301 et seq. Both parties filed motions for summary judgment.

A claim for widow's current insurance benefits as widow of David E. Newsom was approved and benefits paid until April, 1944, after plaintiff's commitment as a mentally incompetent person at the Pontiac State Hospital under an order of the Probate Court of Macomb County. Plaintiff was also receiving child's insurance benefits for three minor children and at the time of her commitment one child was still eligible to receive such benefits and such payments are now being made to the legal guardian of such child. The child makes its home with a daughter of the plaintiff, who is also legal guardian of the child.

A petition for reinstatement of the widow's current insurance benefits filed with the Area Office, Bureau of Old-Age and Survivors Insurance of the Social Security Board, was denied on the basis of a Social Security Board operating rule adopted January 14, 1941, providing, in substance, that a mentally incompetent widow is incapable of having a wage earner's child in her care if the widow and child are separated and the widow is deemed to be incompetent by judicial or medical authority, and, since plaintiff did not have a minor child of the wage earner in her care, she was no longer entitled to such benefits. Plaintiff took exception to this determination and, after a hearing before the Referee of Region V, her claim was again denied for the same reason. Plaintiff followed with an appeal

of the Referee's interpretation of the applicable provisions of the Act, claiming that although she is confined in an institution as a mentally incompetent person she has continued to care for the child, through her daughter, and has from time to time given instructions with reference to the care of the child in her letters to the child and to the daughter with whom the child lived. The appeal was taken to the Appeals Council for a review of the Referee's decision; plaintiff's appearance before the Council was waived and a brief submitted in answer to the Referee's findings of facts and decision. The Appeals Council affirmed the Referee's findings of facts and decision and this suit followed.

Plaintiff admits all material facts as found by the Board but challenges the application of those facts to the Act and its regulations and rules. It is conceded by both parties that the only question for determination by this court is whether, under the circumstances in the instant case, the plaintiff had in her care a child of the deceased wage-earner and therefore entitled to the benefits claimed.

This action arises under Act of August 10, 1939, Chap. 666, Title II, Sec. 201, 53 Stat. 1362, amending Title II of the Social Security Act, 42 U.S.C.A. § 402.

Title 42 U.S.C.A. § 402(e) (1) provides for payment of widow's current insurance benefits to every widow of an individual who died a fully or currently insured individual if such widow * * * (e) at the time of filing such application has in her care a child of such deceased individual entitled to receive a child's insurance benefit.

Sec. 403 (d) of the Act provides for deductions, in such amounts and at such time or times as the Board shall determine, from payments under Sections 401–409 of this Title to which an individual is entitled, until the total of such deductions equals such individual's benefit or benefits for any month in which such * * * (3) * * * widow entitled to a widow's current insurance benefit, did not have in her care a child of her deceased husband entitled to receive a child's insurance benefit.

Under authority granted to it by Sec. 405 of the Act the Board made certain regulations, Sec. 403.503(e) of which determines the amount to be deducted in case of failure of a widow to have a child in her care to be equal to the widow's current insurance benefit to which such widow was entitled for the month in which she did not have such a child in her care.

In determining whether or not plaintiff has a child of the deceased wage-earner in her care it becomes necessary to consider the purposes for which such additional allowance was provided under the Act and whether such purposes would be served by continuing this allowance to plaintiff.

The legislative history of the Social Security Act reflects an intent on the part of Congress, in providing for benefits to the widow in addition to benefits for minor children, to extend financial protection to the widow, regardless of her age, while she has in her care a child of the deceased husband entitled to child's insurance benefits, to supplement the orphan's benefits and, either to enable the widow to remain at home and care for the child, or, at least to assume parental responsibility for the welfare and care of the child if she did not live in the same home with the child. (Vol. 1, p. 33, House Hearings on 1939 Amendments, 76th Congress, 1st Sess.; Senate Report No. 734, p. 45; House Report No. 728, p. 37, 76th Congress, 1st Sess.)

The widow cannot claim such benefits, although she be a dependent of the deceased, unless she has a child in her care entitled to child's insurance benefits. It necessarily follows that the advantages afforded by such additional payments are intended ultimately to inure, though indirectly, to the benefit of the child. Congress thus far has not legislated for the benefit of persons standing in loco parentis. One of the provisions of this law deprives the widow of these benefits if she earns more than a stated sum. The logical inference of this provision is that the Act contemplates more than the furnishing of the bare necessities of life available for the child's welfare. Any such duties and responsibilities, whether legal or moral, could be read-

ily entrusted to another. The primary purpose was to secure for the child the advantages of a mother's watchful attention, to relieve the mother of financial stress so that, if necessary, she might forego gainful employment in order that she might devote sufficient time and attention to the welfare of the child.

By what standard is "care" measured in a mother and child relationship? A mother's care involves a great deal more than the mere custody, control and maintenance of a child by another person, other than its mother. It is not limited to the furnishing of a home, food, clothing, and attending to other needs of that child. It suggests the advantages of that deep concern, anxiety, solicitude, tenderness, forbearance, indulgence, and the constant attention and devotion of a mother toward a child, inspired by her natural love and affection for her offspring—all implying a continued and close personal contact. Except for some letters from the mother to the daughter containing instructions relative to the care of the child, it cannot be said that the child in this instance is receiving a mother's care such as the Act contemplates. The instructions in the letters could be followed or not, depending on the ultimate decision of the daughter whether they should be followed, and whether they would be for the best interests of the child. The situation of this minor is the same as that of a parentless child, and yet, in the latter situation no additional payments, other than the child's insurance benefits, could be claimed. Relief could only be supplied by Congressional legislation for the benefit of children so situated. If the payments to plaintiff had been continued, the advantages thus secured would conceivably inure to the benefit of the mentally incompetent widow's estate which is subject to payment of her hospitalization expense and other claims, with the result that the use to which these payments would be put would entirely defeat the purpose for which they were intended.

A mentally incompetent person is one who is affected so mentally as to be deprived of sane and normal action. In re Johnson's Estate, 286 Mich. 213, 281 N.W. 597, 600. Plaintiff has been adjudged by a court of competent jurisdiction as one who is incapable of managing her own affairs. Her confinement in a mental institution was necessary for the reasons stated in the petition to have her adjudged mentally incompetent, filed by her daughter. The petition is supported by certificates of two physicians which recite that she "had threatened suicide and homicide person of son". The medical superintendent of the Pontiac State Hospital, where she is now confined, evaluated her condition in a letter to the Referee as follows: "It is my opinion that ever since she came to the hospital she has been incompetent of caring for her seven-year-old son; during none of the time that she has been in the hospital could she be entrusted to care for her seven-year-old son outside of the hospital."

From the record before this court it appears that she has been incapable of properly guarding the welfare and best interests of her child and has not, in fact, been giving it that care which is a condition to benefits under the Act.

The Board's findings that plaintiff does not have a child of her deceased husband in her care and therefore not entitled to receive the widow's current insurance benefits during the period of time that she does not have such child in her care, are supported by the great weight of the evidence and are consistent with the statute and regulations.

Plaintiff's motion for summary judgment is therefore denied and defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed.

Judgment for defendant.