Rose and Richard **COOPER**, on behalf of themselves and all others similarly situated

v.

Joseph **CALIFANO**, Secretary of the Department of Health, Education and Welfare.

No. 78–594.

United States District Court,
E. D. Pennsylvania.

Dec. 29, 1978.

Henry J. Sommer, Ellen Josephson, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Joseph M. Gontram, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Under section 202(b)(1)(B) of the Social Security Act, the wife of a disabled wage earner is entitled to "wife's insurance benefits" if she *either* has reached the age of sixty-two *or* has in her care a minor child.[1]

---

1. To be precise, a wife who has not reached the age of sixty-two is entitled to "wife's insurance benefits" under this provision if she has in her care a child who is entitled to "child's insurance benefits" based on the father's earning record. *See* 42 U.S.C. § 402(b)(1)(B) (1976); 20 C.F.R. § 404.313(a)(2) (1978). A child's eligibility for "child's insurance benefits" is governed by § 202(d) of the Social Security Act, 42 U.S.C. § 402(d) (1976). "Generally, the child must be dependent on the wage earner and either under 18 years old (or a full-time student under 22 years old) or under a disability."

42 U.S.C. § 402(b)(1)(B) (1976). The *husband* of a disabled wage earner, however, is entitled to "husband's insurance benefits" *only* if he has reached the age of sixty-two. 42 U.S.C. § 402(c)(1)(B) (1976), *as amended by* Social Security Amendments of 1977, Pub.L. No. 95–216, § 334(b)(1)(B), 91 Stat. 1509. The principal question in this case is whether this statutory classification violates the equal protection component of the fifth amendment.

The essential facts here are undisputed. Plaintiffs Richard and Rose Cooper are husband and wife. Rose Cooper worked "as a factory worker from 1951 until 1962," when she contracted multiple sclerosis and was forced to stop working. Complaint ¶¶ 12–13. In 1964, she was found eligible for disability benefits based on her own earning record, and she has received such benefits since that time. *Id.* ¶ 14. The Cooper's two minor children, who live at home, have received "child's insurance benefits" based on Mrs. Cooper's earning record since 1964. *See generally* 42 U.S.C. § 402(d) (1976); note 1 *supra.* In 1973,[2] Mrs. Cooper's "steadily deteriorating condition" forced Richard Cooper to stop working in order to remain at home and care for his wife and their children. Complaint ¶ 16. Although the Cooper's two minor children have been in Richard Cooper's care[3] since 1964, he has

never been eligible for "husband's insurance benefits" under the Social Security Act because he has not reached the age of sixty-two. *See* 42 U.S.C. § 402(c)(1)(B) (1976).

Richard Cooper first applied[4] for "husband's insurance benefits" on June 15, 1976. Record at 30–33. He later received a notice of determination, dated August 26, 1976, that stated in part:

"You do not qualify for husband's benefits because you do not meet a requirement of the law. That requirement is that a husband must among other requirements have attained age 62. You have informed us that your date of birth is January 30, 1930 so you are not yet age 62. When you reach age 62 you may be eligible for husband's benefits."

Record at 17–A.

Mr. Cooper filed a second application on April 11, 1977. Record at 11–14. He later received a notice of determination, dated June 28, 1977, that stated in part:

"Husband's benefits are not payable at this time because you are not yet age 62. Based on the evidence given to us, you were born on January 30, 1930. When you reach age 62, please contact any social security office promptly."

Record at 8.

---

*Mathews v. De Castro,* 429 U.S. 181, 183, n.4, 97 S.Ct. 431, 433, 50 L.Ed.2d 389 (1976).

**2.** Although the complaint gives 1973 as the year in which Mr. Cooper stopped working, plaintiffs' memorandum of law in support of their motion for summary judgment states that Mr. Cooper stopped working in 1967. For the time being, I will adopt the date used in the complaint; the precise date is presently of no great importance.

**3.** *Cf.* note 1 *supra* (wife of disabled worker eligible for benefits, although under 62 years of age, if she has a minor child in her care). The Secretary of Health, Education and Welfare has promulgated interpretative regulations that aid in determining whether a claimant has a child in his or her care for purposes of the Social Security Act. *See* 20 C.F.R. §§ 404.342 to .349 (1978). *See also Newsom v. Social Security Bd.,* 70 F.Supp. 962, 964–65 (E.D.Mich.1947).

**4.** The complaint alleges that Richard Cooper made several attempts, prior to June of 1976, to

apply for benefits. Complaint ¶¶ 18–21. Defendant denies "all allegations regarding actual or constructive applications prior to June 15, 1976." Answer ¶ 9. Although plaintiffs have filed an affidavit, executed by Richard Cooper, that supports these allegations, I shall make no determination regarding any actual or constructive applications filed prior to June 15, 1976. Plaintiffs apparently never asserted the existence of such claims during the administrative process, so that the Secretary has never had an opportunity to pass on the underlying factual issues. Moreover, the expedited appeals process agreement entered into by Richard Cooper and the Secretary, which afforded Mr. Cooper the opportunity for judicial review of his constitutional claim even though he had not exhausted his administrative remedies as required by 42 U.S.C. § 405(g) (1976), expressly states that the only disputed issue here is the constitutionality of § 202(c) of the Act, 42 U.S.C. § 402(c) (1976). Record at B–1.

On July 12, 1977, Mr. Cooper filed a request for reconsideration of the denial of benefits. Record at 7. He later received a notice of reconsideration, dated November 15, 1977, upholding the earlier denial of benefits. Record at 6–A. The notice of reconsideration listed the conditions for entitlement to "husband's insurance benefits," including the requirement (repealed in 1977) that the husband had been receiving at least one-half of his support from his wife before she became disabled.[5] The notice then went on to say:

"Effective March 1977, the claimant must meet all of the above requirements except that of one-half support.

The evidence in your case indicates you were born January 30, 1930. Thus since you have not attained age 62, you fail to meet all of the requirements for husband's benefits under either the provisions of the Act in effect when you filed your application or the those [sic] in effect since March 1977."

Record at 6–A.

Early in 1978, Richard Cooper and a representative of the Secretary entered into an expedited appeals process agreement. Record at B–1. By the terms of this agreement, the November 15, 1977 reconsideration determination became a final decision of the Secretary for purposes of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1976). See generally 20 C.F.R. § 404.916d(b)(5) (1978). As a result, Richard Cooper was able to seek judicial review of the denial of benefits without exhausting his remaining administrative remedies. See id. § 404.916e. Plaintiffs then filed this complaint within the sixty days, as required by the terms of the agreement. See id.

Richard and Rose Cooper both challenge the denial of "husband's insurance benefits" to husbands who, although they have not reached age sixty-two, have a minor child in their care. Although they advance closely related constitutional arguments, the Coopers seek to represent two distinct classes of persons. Richard Cooper seeks to represent the class of similarly situated husbands, while Rose Cooper seeks to represent the class of female wage earners whose husbands are members of the class represented by Richard Cooper. Plaintiffs seek declaratory and injunctive relief, as well as an award of retroactive benefits.

Presently before me are defendant's motion to dismiss Rose Cooper as a party plaintiff, plaintiffs' motions for class action certification, for sanctions, and for summary judgment, and defendant's request[6] for summary judgment. I shall consider each of these in turn.

### DEFENDANT'S MOTION TO DISMISS ROSE COOPER AS A PARTY PLAINTIFF

The Secretary argues, first of all, that subject-matter jurisdiction over Rose Cooper's claim is lacking here. He relies on section 205(h) of the Social Security Act, 42 U.S.C. § 405(h) (1976), which provides that "[n]o . . . decision of the Secretary shall be reviewed by any . . . tribunal . . . except as . . . provided [in section 205(g) of the Act]." Section 205(g), in turn, provides that "[a]ny individual, after any final decision of the Secretary made after a hearing . . . may obtain a review of such decision by a civil action . . . ." 42 U.S.C. § 405(g) (1976). The Supreme Court has held that the "final decision" language of section 205(g) includes "the requirement that a claim for benefits shall have been presented to the Secretary." Mathews v. Eldridge, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); see e. g., Town Court Nursing Center, Inc. v. Beal, 586 F.2d 266, 274 (3d Cir. 1978) (en banc); Jones v. Cali-

---

5. Following the Supreme Court's decision in *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), Congress deleted the one-half-support test of § 202(c)(1)(C) as a condition of eligibility for "husband's insurance benefits." *See* Social Security Amendments of 1977, Pub.L. No. 95–216, § 334(b)(1)(A), 91 Stat. 1509.

6. The Secretary has not filed a formal motion for summary judgment, but he has submitted a brief supporting his position that he is entitled to summary judgment here. Document No. 18.

*fano,* 576 F.2d 12, 18 (2d Cir. 1978). On the present facts, the Secretary argues that only *Richard* Cooper presented a claim for benefits to the Secretary. Thus, although Richard Cooper applied for benefits based on his wife's earning record, and although Rose Cooper submitted a "Wife's Certification" form [7] in connection with each of her husband's applications, the Secretary contends that *Rose* Cooper never presented a claim for benefits to the Secretary, and that she consequently may not seek judicial review under section 205(g).

Plaintiffs, emphasizing that Rose Cooper executed the "Wife's Certification" forms, argue that she may indeed base jurisdiction on section 205(g). Their argument, as it appears in their brief, is as follows:

"When Richard Cooper filed his application, and Rose Cooper took her requisite part in the application process, her claim was therefore necessarily presented to the Secretary along with that of her husband. Not only did she participate to the full extent possible in the applications process, there is simply no way that the Secretary could pass on Richard's claim for benefits without reaching the question of whether Rose was entitled to benefits for him on her account. The two questions are indistinguishable. Rather than adopt the highly technical analysis urged by the defendant, plaintiffs urge this court to view the facts alleged in the complaint with a realistic eye and find that Rose Cooper has, indeed, presented her claim to the Secretary."

Plaintiffs' Memorandum of Law (Document No. 17) at 3.

I have no quarrel with plaintiffs' suggestion that section 205(g) should be applied in a "realistic" fashion. I simply question whether plaintiffs' interpretation of the facts alleged here deserves to be called "realistic." Their suggestion that Rose Cooper in effect submitted a claim for "benefits for

[Richard Cooper] on her account" certainly finds no support in the statutory framework. The Social Security Act, after all, provides that a *husband* who applies for "husband's insurance benefits," and who meets certain other requirements, "shall be entitled to a husband's insurance benefit . . . .." 42 U.S.C. § 402(c)(1) (1976). Nothing in the Act supports plaintiffs' view that a disabled female wage earner has some sort of "claim" to "husband's insurance benefits" for her husband.

For the moment, however, I will pass over this issue and examine plaintiffs' other jurisdictional arguments. The complaint advances two possible alternative bases for jurisdiction over Rose Cooper's constitutional claim: general federal-question jurisdiction, 28 U.S.C. § 1331 (1976), and section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976). Complaint ¶ 2.

■ At the outset, I note that neither provision can support jurisdiction here if the second sentence of section 205(h), 42 U.S.C. § 405(h) (1976), is controlling. That sentence, which I quoted earlier, reads as follows: "No . . . decision of the Secretary shall be reviewed by any . . . tribunal . . . except as . . . provided [in section 205(g)]." Plaintiffs evidently contend that Rose Cooper seeks here to review a *statute,* rather than a decision of the Secretary, and that such an action falls outside the scope of the quoted sentence. This argument is not without support in the case law. *See generally Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *see also Weinberger v. Salfi,* 422 U.S. 749, 756–64, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). I shall therefore proceed to consider in greater detail plaintiffs' two alternative bases for jurisdiction over Rose Cooper's constitutional claim.

First, plaintiffs rely on the general federal-question jurisdiction conferred by 28

---

7. Record at 9–10, 28–29. The "Wife's Certification" form sought to ascertain (1) whether the claimant was actually married to the female wage earner, and (2) if so, whether the wife had contributed one-half of her husband's support. The latter information was pertinent in

light of former § 202(c)(1)(C), which limited "husband's insurance benefits" to husbands who had been receiving one-half of their support from their wives. As I noted earlier, this requirement was deleted from the Social Security Act in 1977. *See* note 5 *supra.*

U.S.C. § 1331 (1976). This approach however, runs up against the third sentence of section 205(h), 42 U.S.C. § 405(h) (1976), which states: "No action against . . . the Secretary . . . shall be brought under sections [1331 or 1346] of Title 28 to recover on any claim arising under [Title II of the Social Security Act, 42 U.S.C.A. §§ 401–433 (1974 & Supp.1978)]." Assuming that Rose Cooper's constitutional claim may be conceptually severed from her husband's claim, does the quoted language preclude her reliance on section 1331 as a basis for jurisdiction here? The answer depends upon (1) whether Rose Cooper's claim "arises under" Title II of the Social Security Act, and (2) whether, at least with respect to her, this is an action "to recover on" a claim that arises under Title II. Ample ground for dispute exists as to both points. *Compare Weinberger v. Salfi,* 422 U.S. 749, 760–62, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) *with id.* at 795–99, 95 S.Ct. 2457 (Brennan, J., dissenting) Moreover, a holding that section 205(h) precludes judicial review of Rose Cooper's constitutional claim might raise some doubt as to the constitutionality of section 205(h) itself. *Compare Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) *with Weinberger v. Salfi, supra,* 422 U.S. at 762–64, 95 S.Ct. 2457.

Plaintiffs' reliance on section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976), as a basis for jurisdiction, on the other hand, runs up against the Supreme Court's holding in *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), that section 10 "is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions."

As the foregoing discussion demonstrates, the Secretary's motion to dismiss Rose Cooper as a party plaintiff raises a number of difficult statutory and constitutional questions. I believe that prudence counsels against resolving the Secretary's motion on its merits. For reasons that will appear shortly, I have determined that Richard Cooper may represent a limited class of similarly situated husbands, and that sum-

mary judgment should be entered in favor of the class on the merits of the classwide constitutional claim. The inclusion of Rose Cooper here—whether as an individual plaintiff or as a class representative—would not affect the scope of relief to be awarded here. In their complaint, plaintiffs seek declaratory and injunctive relief against the continued operation of section 202(c)(1) "insofar as it denies benefits to" Richard Cooper and similarly situated husbands. Plaintiffs also seek an award of retroactive benefits to husbands who were denied benefits by reason of section 202(c)(1). Thus, no additional relief would be forthcoming even if I were to determine that Rose Cooper is also entitled to summary judgment on the merits of her closely related constitutional claim. Plaintiffs concede as much in their brief, for they note that "the entire case may be disposed of on [Richard Cooper's] claim." Memorandum of Law (Document No. 17) at 5 n.*. Under the circumstances, no ruling on the Secretary's motion is necessary. *Accord, Jablon v. Secretary of HEW,* 399 F.Supp. 118, 121 (D.Md.1975) (given court's determination that husband's constitutional challenge to § 202(c)(1)(C) was meritorious, it was unnecessary to determine whether jurisdiction existed over similar challenge asserted by co-plaintiff wife) (three-judge court), *aff'd mem. sub nom. Califano v. Jablon,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977).

## PLAINTIFFS' MOTION FOR CLASS ACTION CERTIFICATION

As I noted earlier, Rose and Richard Cooper each seek to represent a class of persons affected by the statutory limitations on eligibility for "husband's insurance benefits." I will consider plaintiffs' motion only insofar as it relates to Richard Cooper and the class that he seeks to represent. For the reasons already stated, it is unnecessary to determine whether Rose Cooper may represent a corresponding class here.

With respect to Richard Cooper, jurisdiction over this action is conferred by section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g) (1976), and the Secretary has not suggested any jurisdictional problem in that regard. However, the Secretary *does* challenge the availability of the class action device under section 205(g), and so the first question here is whether a plaintiff proceeding under that section may ever represent a class. The Secretary urges, with some force, that class action procedures are simply incompatible with the limited jurisdictional grant of section 205(g).

■ As both parties know, this issue is now before the Supreme Court in *Elliott v. Weinberger,* 564 F.2d 1219 (9th Cir. 1977), *cert. granted sub nom. Califano v. Elliott,* —— U.S. ——, 99 S.Ct. 75, 58 L.Ed.2d 106 (1978). Neither party has suggested that I defer ruling on plaintiffs' motion until the Supreme Court addresses this issue, however, and I see no reason to do so. For at this point, those courts that have addressed the question have *all* concluded that section 205(g) does not preclude the maintenance of a class action. *Accord, Norton v. Mathews,* 427 U.S. 524, 535–38, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) (Stevens, J., dissenting); *see Caswell v. Califano,* 583 F.2d 9, 14 & n.12 (1st Cir. 1978); *Mattern v. Mathews,* 582 F.2d 248, 259 (3d Cir. 1978), *petition for cert. filed sub nom. Califano v. Mattern,* 47 U.S.L.W. 3318 (U.S. Oct. 26, 1978); *Jones v. Califano,* 576 F.2d 12, 21–22 (2d Cir. 1978); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 343–47 (3d Cir. 1977); *Tatum v. Mathews,* 541 F.2d 161 (6th Cir. 1976); *Johnson v. Mathews,* 539 F.2d 1111, 1125–26 (8th Cir. 1976); *Jimenez v. Weinberger,* 523 F.2d 689, 694–97 (7th Cir. 1975) (Stevens, J.). I therefore cannot accept the Secretary's argument that a plaintiff proceeding under section 205(g) may never represent a class. Accordingly, I shall proceed to consider whether this action may properly be certified as a class action.

Section 205(g) provides in pertinent part that "[a]ny individual, after any final decision of the Secretary . . . may obtain a review of such decision by a civil action commenced within sixty days . . . ." Richard Cooper seeks to represent the broadest possible class of similarly situated husbands that could be certified consistently with the jurisdictional prerequisites of section 205(g). Specifically, he seeks to represent the class of husbands (a) whose wives receive disability insurance benefits, (b) who applied for "husband's insurance benefits" based on their wives' earning records, (c) who had in their care at least one child who is entitled to "child's insurance benefits" based on the mother's earning record, and (d) whose applications for "husband's insurance benefits" (1) were not acted upon, or (2) were denied within sixty days prior to the filing of this complaint because they had not reached the age of sixty-two. Plaintiffs' Motion for Class Action Certification (Document No. 10). In resolving this motion, I must determine, by reference to section 205(g), whether subject-matter jurisdiction exists over the unnamed class members' claims, and, if so, whether the proposed class satisfies the requirements of Rule 23. I shall consider these issues in turn.

■ Two aspects of section 205(g)—the "final decision" requirement and the sixty-day statute of limitations—are particularly important in delimiting the class here. Section 205(g) authorizes judicial review of "any final decision of the Secretary." 42 U.S.C. § 405(g) (1976). In *Weinberger v. Salfi, supra,* the Supreme Court announced that the "final decision" requirement is "central to [section 205(g)'s] grant of subject-matter jurisdiction." 422 U.S. at 764, 95 S.Ct. at 2466. More recently, however, the Court noted that the "final decision" requirement

"consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary."

*Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

Although class actions under section 205(g) are of fairly recent vintage, it appears that the unnamed class members in such actions must ordinarily satisfy both elements of the "final decision" requirement. *See Norton v. Mathews,* 427 U.S. 524, 535–36, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) (Stevens, J., dissenting); *Mathews v. Diaz,* 426 U.S. 67, 71–72 n.3, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Weinberger v. Salfi, supra,* 422 U.S. at 763–64, 95 S.Ct. 2457; *Caswell v. Califano,* 583 F.2d 9, 13–14 & nn.11–12 (1st Cir. 1978); *Jones v. Califano,* 576 F.2d 12, 18–21 (2d Cir. 1978); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 343–46 (3d Cir. 1977); *De Lao v. Califano,* 560 F.2d 1384, 1388 (9th Cir. 1977); *Johnson v. Mathews,* 539 F.2d 1111, 1116–17 (8th Cir. 1976).

■ With respect to the non-waivable requirement that "a claim for benefits shall have been presented to the Secretary," *supra,* the proposed class is overly broad. It specifically includes similarly situated husbands who applied for "husband's insurance benefits" and whose applications were never acted upon. The Supreme Court has construed this first, non-waivable aspect of section 205(g) to require that the Secretary have made *some* decision on the claim for benefits, although not necessarily a final decision. *See Mathews v. Diaz,* 426 U.S. 67, 71–72 n.3, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) ("[S]ome decision by the Secretary is clearly required by the statute."); *Weinberger v. Salfi, supra,* 422 U.S. at 763–64, 95 S.Ct. 2457 (*semble*). Those husbands whose applications were never acted upon obviously have not met even this first, non-waivable requirement of section 205(g), and I therefore have no jurisdiction over their claims.

■ With respect to the waivable requirement that a claimant have exhausted the administrative remedies prescribed by the Secretary, a related difficulty arises.

The remaining members of the proposed class, by definition, have filed applications that were denied by the Secretary, but nothing in the complaint suggests that any of these husbands has taken any further steps in the direction of exhausting administrative remedies. Although the Secretary may waive the exhaustion requirement,[8] he has not done so in this case.

■ It does not necessarily follow, however, that subject-matter jurisdiction over the unnamed class members' claims is lacking. The court itself may, in an appropriate case, waive the exhaustion requirement.[9] I believe that an examination of the policy underlying the exhaustion requirement shows that a limited waiver by the court is appropriate here.

In an action such as this one, exhaustion serves the important end of allowing the Secretary to satisfy himself, with respect to each individual claim, "that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act." *Weinberger v. Salfi, supra,* 422 U.S. at 765, 95 S.Ct. at 2467. The courts have quite properly been reluctant to overturn—on constitutional grounds—a decision of the Secretary before the Secretary has satisfied himself with respect to those possibilities. And plaintiffs point to nothing that might warrant setting aside the exhaustion requirement completely. Thus, the class members' claims are not procedural due process claims that might be termed "collateral to [their] substantive claim[s] of entitlement to benefits." *Mattern v. Mathews,* 582 F.2d 248, 253 (3d Cir. 1978), *petition for cert. filed sub nom. Califano v. Mattern,* 47 U.S.L.W. 3318 (U.S. Oct. 26, 1978). *See generally De Lao v. Califano,* 560 F.2d 1384, 1388 (9th Cir. 1977). Nothing in the record suggests that

8. *E. g., Mathews v. Diaz,* 426 U.S. 67, 76–77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976).

9. *E. g., Mathews v. Eldridge,* 424 U.S. 319, 330–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 344–46 (3d Cir. 1977) (alternative holding); *cf. Jones v. Califano,* 576 F.2d 12, 18–21 (2d Cir. 1978) (plaintiffs situated similarly to *Eldridge* plaintiff; court found "constructive" waiver by the Secretary).

the unnamed class members may, if required to exhaust their administrative remedies, suffer irreparable harm before judicial review becomes available. *See generally Mathews v. Eldridge,* 424 U.S. 319, 330–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 344–46 (3d Cir. 1977). Although some of the unnamed class members may be inconvenienced by this delay, plaintiffs do not suggest that any particular financial hardship will result if exhaustion is required here. *See generally Caswell v. Califano,* 583 F.2d 9, 13–14 (1st Cir. 1978).

Nevertheless, I believe that a limited waiver of the exhaustion requirement *is* appropriate here. Some similarly situated husbands whose claims have been denied undoubtedly have available to them further administrative remedies, such as requests for reconsideration or requests for evidentiary hearings. In light of my determination that the challenged statutory classification is unconstitutional, judicial intervention with respect to *those* husbands need not await the exhaustion of remedies. A more practical approach would be simply to enjoin the Secretary from applying the invalid statutory provision when he takes further administrative action on their claims. This remedy avoids the evils of premature judicial interference in the administrative process. The Secretary, when he takes further action on these claims, can *simultaneously* (1) eliminate the invalid basis for earlier denials of benefits, and (2) scrutinize the records to insure, before any benefits are awarded, that the claims are "neither otherwise invalid nor cognizable under a different section of the Act." 422 U.S. at 765, 95 S.Ct. at 2467.

Because exhaustion of remedies would serve little or no purpose with respect to those husbands whose claims will receive further consideration by the Secretary, I conclude that a waiver of the exhaustion requirement is appropriate with respect to this limited group. Thus, I have subject-matter jurisdiction over the claims of those unnamed class members.

Section 205(g) also contains a sixty-day statute of limitations, which further limits the scope of the class that Richard Cooper may represent. With respect to those husbands who *have* exhausted their administrative remedies (and I shall assume that there are some who have done so), the class may include only those who did so on or after January 10, 1978, sixty days before this complaint was filed. With respect to those husbands who have *not* exhausted their administrative remedies, and for whom a waiver of the exhaustion requirement is appropriate in light of the above discussion, the class once again may include only those whose claims were denied—at some level of the administrative process—on or after January 10, 1978.

Finally, section 205(g) requires two other limitations on class membership. With respect to those husbands who have exhausted their administrative remedies, for whom the appropriate relief here will be a judgment reversing the Secretary's final decisions, the class may include only those whose claims were finally denied before December 29, 1978, the date of this opinion. With respect to those husbands whose claims will receive further administrative action, the class may again include only those husbands whose claims were denied—at some level of the administrative process—before December 29, 1978.

In light of the above discussion of section 205(g), the proposed class here would be limited to those husbands (a) whose wives receive disability insurance benefits, (b) who applied for "husband's insurance benefits" based on their wives' earning records, (c) who had in their care at least one child who is entitled to "child's insurance benefits" based on the mother's earning record, and (d) whose claims either (1) were finally denied, following exhaustion of administrative remedies, between January 10, 1978 and December 28, 1978, inclusive, because they had not reached the age of sixty-two, or (2) were denied at some level of the administrative process between January 10, 1978 and December 28, 1978, inclusive, because they had not reached the age of sixty-

two, *and* are subject to further consideration by the Secretary. The question then becomes: does this class satisfy the requirements of Rule 23?

■ Briefly, class certification is proper where the four requirements of Rule 23(a) —numerosity, commonality, typicality, and adequacy—are satisfied and the action comes within one of the four subdivisions of Rule 23(b). Putting aside the issue of numerosity for the moment, the proposed class action clearly meets both the commonality and the typicality requirements of Rule 23. Moreover, the adequacy-of-representation requirement is also satisfied here, for plaintiffs' attorneys appear to be fully competent and the record suggests no conflicting interests among the class members. Finally, this action fits comfortably within Rule 23(b)(2), for "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

■ The remaining prerequisite of Rule 23(a) is the numerosity requirement. Shortly after this complaint was filed, plaintiffs' counsel served interrogatories on the attorney of record for defendant Secretary. These interrogatories were ostensibly aimed at discovering the number of husbands who would be eligible for "husband's insurance benefits" but for the statutory classification challenged here. The Secretary neither objected to, nor answered, these interrogatories. Plaintiffs therefore seek an order precluding the Secretary from opposing class certification on the ground of failure to satisfy the numerosity requirement. *See generally* Fed.R.Civ.P. 37(b), (d). Under the circumstances, I believe that a slightly different form of relief

is appropriate. I shall enter an order providing that the fact of numerosity "shall be taken to be established for the purposes of [this] action." Fed.R.Civ.P. 37(b)(2)(A).

In light of this sanction for failure to respond to plaintiffs' interrogatories, plaintiffs have established that Richard Cooper may bring this action on behalf of a properly defined class of similarly situated husbands. I shall therefore enter an order certifying this action as a class action under Rule 23(b)(2), and defining the class so as to conform to section 205(g), in accordance with the discussion herein.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S REQUEST FOR SUMMARY JUDGMENT

Turning now to the merits of this case, I note that neither side suggests the existence of any disputed factual issues.[10] To the contrary, the parties agree that only legal issues remain in dispute here, and that the case may appropriately be resolved— one way or the other—through summary judgment procedures. *See generally* Fed.R. Civ.P. 56(c).

Richard and Rose Cooper each contend that the challenged provisions of the Social Security Act, as applied to themselves and to others similarly situated, worked a denial of equal protection. Richard Cooper contends that those statutory provisions discriminate against the husbands of disabled wage earners, while Rose Cooper contends that those same provisions discriminate against disabled female wage earners. For the reasons I have already stated in connection with the Secretary's motion to dismiss Rose Cooper as a party plaintiff, I believe that it is unnecessary to address the merits of Rose Cooper's claim at all. *Accord, Jab-*

---

10. As I pointed out earlier, *see* note 4 *supra,* the parties disagree as to whether Richard Cooper applied for "husband's insurance benefits" prior to June 15, 1976. In my view, however, that issue would more properly be raised at the administrative level in the first instance. *See id.* Thus, if Richard Cooper seeks to recover benefits based on an application made prior to June of 1976, I believe that the proper course

would be for him to present that claim to the *Secretary following the entry of judgment in* this action. Neither side suggests that this subsidiary factual issue should preclude the resolution—through summary judgment procedures—of the legal issues that are controlling with respect to Richard Cooper's later applications for benefits.

lon v. Secretary of HEW, 399 F.Supp. 118, 122–24 (D.Md.1975) (three-judge court), aff'd mem. sub nom. Califano v. Jablon, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977). I shall therefore address only the constitutional claim advanced by Richard Cooper on behalf of himself and the class he represents.

Richard Cooper challenges section 202(c)(1) of the Social Security Act, which defines the conditions of entitlement to "husband's insurance benefits." See 42 U.S.C. § 202(c)(1) (1976), as amended by Social Security Amendments of 1977, Pub.L. No. 95–216, § 334(b)(1), 91 Stat. 1509. He contends that section 202(c)(1)(B), which requires that the husband have reached the age of sixty-two, violates the equal protection component of the fifth amendment because a wife may receive "wife's insurance benefits," even though she has not reached the age of sixty-two, provided that she has in her care a minor child. See 42 U.S.C. § 402(b)(1)(B) (1976); note 1 supra.

■ At the outset, some general observations about the applicable legal standards may be in order. Richard Cooper invokes here the equal protection component of the fifth amendment, rather than the equal protection clause of the fourteenth amendment, because the challenged classification was drawn by Congress, rather than by a state legislature. See generally Karst, The Fifth Amendment's Guarantee of Equal Protection, 55 N.C.L.Rev. 541 (1977). Although these two equal protection guarantees "are not always coextensive," [11] the Supreme Court has consistently treated them as equivalent in the context of challenges to provisions of the Social Security Act. See, e. g., Califano v. Webster, 430

U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (per curiam) (by implication); Mathews v. De Castro, 429 U.S. 181, 182 n.1, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976); Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (collecting cases). Accordingly, the equal protection analysis required here is not altered simply because a federal official, rather than a state official, is the party defendant.

Before I proceed to sketch the contours of the equal protection analysis that I believe should be applied here, candor compels me to acknowledge the uncertainties inherent in this area of the law. As Professor Karst recently observed, "[s]urely we are near the point of maximum incoherence of equal protection doctrine." Karst, The Supreme Court, 1976 Term—Foreword: Equal Citizenship Under the Fourteenth Amendment, 91 Harv.L.Rev. 1, 3 (1977). And surely the greatest doctrinal difficulties lie in the area of gender-based discrimination. On the one hand, gender-based classifications "cannot be legitimated with the simple recitation of a rationally related purpose." Id. 54 (footnote omitted); see, e. g., Califano v. Webster, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (per curiam); Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (plurality opinion); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).[12] On the other hand, the Supreme Court "has never viewed such classification[s] as inherently suspect or as comparable to racial or ethnic classifications for purposes of equal-protection analysis." Regents of the University of California v. Bakke, 438 U.S. 265, 303, 98 S.Ct. 2733, 2755, 57 L.Ed.2d 750 (1978) (separate opinion of Powell, J.).[13] What the Court has

---

**11.** Hampton v. Mow Sun Wong, 426 U.S. 88, 100, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).

**12.** Cf. Mathews v. Lucas, 427 U.S. 495, 506, 96 S.Ct. 2755, 2762, 49 L.Ed.2d 651 (1976) (classifications based on illegitimacy are not inherently suspect, in part because "discrimination against illegitimates has never approached the severity or pervasiveness of the historic legal and political discrimination against woman and Negroes") (citation omitted).

**13.** Justice Powell also observed that "the perception of racial classifications as inherently odious stems from a lengthy and tragic history that gender-based classifications do not share." Regents of the University of California v. Bakke, 438 U.S. 265, 303. 98 S.Ct. 2733, 2755, 57 L.Ed.2d 750 (1978) (separate opinion of Powell, J.). But cf. Frontiero v. Richardson, 411 U.S. 677, 682–88, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (plurality opinion) (classifications based on gender are inherently suspect).

done is to develop a "middle tier" of equal protection analysis, in which gender-based classifications are subjected to an intermediate level of judicial scrutiny. *See, e. g., Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (plurality opinion); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *The Supreme Court—1976 Term,* 91 Harv.L.Rev. 70, 181–82 (1977).

Beyond that, very little may be said with any confidence. The Court's recent decisions have reiterated the standard announced in *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976): "To withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *See Califano v. Webster,* 430 U.S. 313, 316–17, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (per curiam); *Califano v. Goldfarb,* 430 U.S. 199, 209 n.8 & 210–11, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (plurality opinion). However, the Court has provided scant guidance on the proper application of the *Craig v. Boren* standard. See *Califano v. Webster,* 430 U.S. 313, 321, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (Burger, C. J., concurring in the judgment); *The Supreme Court—1976 Term,* 91 Harv.L.Rev. 70, 181–88 (1977). In particular, with respect to the requirement that a challenged classification must be "substantially related" to the asserted legislative purpose, "it is difficult to predict how close a means-end fit must be in order to pass constitutional muster." *Id.* 185. Thus, lacking a clearly articulated standard by which to evaluate gender-based classifications, we are left to harmonize the Court's precedents in this area as best we can.

■ I believe that two general principles may be drawn from the Court's decisions. First, in assessing a challenged gender-based classification, the reviewing court may properly examine both the legislative materials and the statutory structure in order to determine for itself "whether the asserted objective was the actual legislative purpose of the classification." *The Su-*

*preme Court—1976 Term,* 91 Harv.L.Rev. 70, 183 (1977) (footnote omitted); *see Califano v. Webster,* 430 U.S. 313, 317–20, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); *Califano v. Goldfarb,* 430 U.S. 199, 212–17, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (plurality opinion); *id.* at 219–23, 97 S.Ct. 1021 (Stevens, J., concurring in the judgment); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 648–53, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *cf. Trimble v. Gordon,* 430 U.S. 762, 774–76, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (classification based on illegitimacy). Second, in determining whether the statute is "substantially related" to the legislative purpose, the court should view with disfavor a classification based merely on such stereotypes as "the notion that men are more likely than women to be the primary supporters of their spouses and children." *Weinberger v. Wiesenfeld, supra,* 420 U.S. at 645, 95 S.Ct. at 1231; *see Califano v. Webster, supra,* 430 U.S. at 317, 320, 97 S.Ct. 1192; *Califano v. Goldfarb, supra,* 430 U.S. at 206–07, 210–11, 214–15, 217, 97 S.Ct. 1021 (plurality opinion); *id.* at 222–24, 97 S.Ct. 1021 (Stevens, J., concurring in the judgment); *Frontiero v. Richardson,* 411 U.S. 677, 688–91, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (plurality opinion). With these two principles in mind, I turn to an examination of the challenged statutory provisions.

The present scheme of "wife's insurance benefits" and "husband's insurance benefits" developed "in a piecemeal fashion." *Califano v. Goldfarb,* 430 U.S. 199, 230, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (Rehnquist, J., dissenting); *see* Martin, *Social Security Benefits for Spouses,* 63 Cornell L.Rev. 789, 795–809 (1978). At its inception in 1935, the Social Security system provided "primary" old-age benefits to wage earners who had reached retirement age; the spouse of such a wage earner received no secondary benefits on the wage earner's account. In 1939, however, Congress established a program of "wife's insurance benefits." *See* Social Security Act Amendments of 1939, c. 666, § 201, 53 Stat. 1360. These secondary benefits were payable to the wife of a retired wage earner, but only if the wife had reached the age of sixty-five,

which at that time was retirement age. *Id.* In 1950, Congress broadened the category of eligible wives by providing that a wife who had *not* reached retirement age could still receive "wife's insurance benefits" if she had in her care a minor, or otherwise "entitled," child. *See* Social Security Act Amendments of 1950, c. 809, § 101(a), 64 Stat. 477. At the same time, Congress also created a program of "husband's insurance benefits" for the husbands of retired wage earners. *Id.* This new group of secondary beneficiaries, however, was not offered the alternative that was extended to the wives of retired wage earners. A husband simply could not receive "husband's insurance benefits" unless he had reached retirement age. *Id.* Moreover, even a husband who *had* reached retirement age could receive benefits only if he had been receiving one-half of his support from his wife at the time she became eligible for old-age benefits.[14] *Id.*

Thus, by 1950, the gender-based distinctions challenged here were already in effect with respect to the spouses of *retired* wage earners. Six years later, Congress established a program of disability insurance benefits for disabled wage earners. *See* Social Security Amendments of 1956, c. 836, § 103(a), 70 Stat. 815. Finally, in 1958, Congress extended secondary benefits to the spouses of *disabled* wage earners. Social Security Amendments of 1958, Pub.L. No. 85–840, § 205(b)(1), (c)(2), 72 Stat. 1013. This was accomplished by simply amending the provisions governing "husband's insurance benefits" and "wife's insurance benefits," which had formerly applied to the spouses of persons entitled to old-age benefits, so that they covered the husbands and wives of persons "entitled to old-age *or* disability insurance benefits." *Id.* (emphasis supplied); *see* 42 U.S.C. §§ 402(b)(1), (c)(1) (1976). At that point, the statute assumed essentially its present form.[15]

### Denial of Benefits to Husbands with Minor Children in Their Care

Richard Cooper argues that sections 202(b)(1)(B) and 202(c)(1)(B), taken together, work a denial of equal protection by denying him "husband's insurance benefits" although a wife in his position would receive "wife's insurance benefits." The Secretary concedes that these provisions of the Social Security Act "treat similarly situated persons differently solely because they are not of the same sex." *Califano v. Goldfarb*, 430 U.S. 199, 219, 97 S.Ct. 1021, 1033, 51 L.Ed.2d 270 (1977) (Stevens, J., concurring in the judgment). However, the Secretary contends that these provisions should be upheld in the face of Richard Cooper's constitutional challenge. First, the Secretary argues that this gender-based classification reflects a rational congressional judgment that, among families containing both a disabled wage earner and one or more minor children, those families in which the *husband* is the disabled wage earner will have a greater need for secondary spouse's benefits than will those families in which the *wife* is the disabled wage earner. Second, the Secretary describes the statutory distinction as an effort by Congress to compensate women for the pervasive economic discrimination to which they have previously been subjected. Neither of these arguments is persuasive.

---

**14.** The one-half-support requirement was repealed in 1977. *See* note 5 *supra.*

**15.** A recent legislative development is also of interest here. The Social Security Amendments of 1977, Pub.L. No. 95–216, § 341(a), 91 Stat. 1509, require the Secretary of Health, Education and Welfare to conduct a "detailed study" of proposals to eliminate gender-based discrimination from the Social Security Act. The House of Representatives, however, originally passed a bill that would have eliminated such classifications without awaiting the Secretary's report. *See* H.R. 9346, 95th Cong., 1st Sess. §§ 401–412 (1977); 123 Cong.Rec.H. 11,-

660 (daily ed. Oct. 27, 1977). In particular, the House bill would have extended "husband's insurance benefits" to husbands in Mr. Cooper's situation. *See* H.R. 9346, 95th Cong., 1st Sess. § 406(e) (1977); H.R.Rep. No. 95–702(I), 95th Cong., 1st Sess. 96 (1977), *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 4155, 4253. However, the Senate passed a different version of the bill, and the conference committee deleted those provisions that would have eradicated gender-based classifications. *See* H.R.Conf.Rep. No. 95–837, 95th Cong., 1st Sess. 73 (1977), *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 4308, 4319.

The Secretary's first argument is not unappealing. It would seem utterly unobjectionable for Congress to attempt to predict the circumstances in which the greatest need will result, and to then tailor benefit entitlement to fit those circumstances. *See*, *e. g.*, *Califano v. Jobst*, 434 U.S. 47, 52–53, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977). To quote from the Secretary's brief:

"As the income to the wage earner is reduced [due to disability], any benefits paid to the wife *or* husband of the wage earner provide additional income security. Congress did not contemplate that need for additional income unless the spouse was at least 62 years of age or in the case of a wife had an entitled child in her care. In any of these situations, the spouse would be expected not to be working. Such an expectation would not extend to husbands under age 62."

Defendant's Brief in Support of His Motion for Summary Judgment (Document No. 18) at 7–8.

██ The Secretary's emphasis on the relative *needs* of various family configurations, however, is somewhat misleading. The Federal Old-Age, Survivors, and Disability Insurance Benefits (OASDI) program, 42 U.S.C. §§ 401–431 (1976), which encompasses, *inter alia*, both "husband's insurance benefits" and "wife's insurance benefits," is quite different from "general public assistance laws that simply pay money to those who need it most." *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). Rather, the OASDI program "is intended to insure covered wage earners and their families against the economic and social impact on the family normally entailed by the loss of the wage earner's income due to retirement, disability, or death, by providing benefits to replace the lost wages." *Califano v. Goldfarb*, 430 U.S. 199, 213, 97 S.Ct. 1021, 1030, 51 L.Ed.2d 270 (1977) (plurality opinion). In general, then, dependency on the wage earner, rather than financial need, is the principal condition of entitlement to secondary benefits. *See*, *e. g.*, *Califano v. Jobst*, *supra*, 434 U.S. at 52, 98 S.Ct. 95; *Califano v. Goldfarb*, *supra*, 430 U.S. at 213–16, 97 S.Ct. 1021 (plurality opinion); *Mathews v. De Castro*, *supra*, 429 U.S. at 185–86, 97 S.Ct. 431.

Of course, Congress has not "made *actual* dependency on the wage earner either a sufficient or a necessary condition of eligibility in every case." *Califano v. Jobst*, *supra*, 434 U.S. at 52, 98 S.Ct. at 99 (emphasis supplied, footnote omitted). Rather, Congress "has elected to use simple criteria . . . to determine *probable* dependency." *Id.* (emphasis supplied, footnote omitted).

With respect to the statutory provisions at issue here, even a cursory examination of the Social Security Amendments of 1958 reveals that Congress sought to provide benefits to *dependent* spouses of disabled wage earners. *See* H.R.Rep. No. 2288, 85th Cong., 2d Sess. 5, 12–13, 52 (1958); S.Rep. No. 2388, 85th Cong., 2d Sess. (1958), *reprinted in* [1958] U.S.Code Cong. & Admin. News, pp. 4218, 4219, 4221, 4223, 4227–28; 104 Cong.Rec. 15,734 (1958) (remarks of Rep. Mills). The following excerpt from the House Ways and Means Committee report is illustrative:

"Your committee's bill would provide for the payment of monthly benefits to the dependents of persons receiving disability insurance benefits. The categories of dependents eligible for these benefits would parallel those eligible for benefits as dependents of old-age insurance beneficiaries—namely, wives and dependent husbands who have reached retirement age; unmarried dependent children . . . .; and wives who have an eligible child in their care."

H.R.Rep. No. 2288, 85th Cong., 2d Sess. 12 (1958).

Thus, the challenged classification reflects *at most* an implicit congressional judgment that the wife of a disabled wage earner, if she has in her care a minor child, is likely to be dependent upon her husband although she has not reached retirement age, whereas the husband of a disabled wage earner, *even if* he has a minor child in his care, is unlikely to be dependent upon

his wife if he has not reached retirement age. (Of course, "husband's insurance benefits" were in any event payable only to those husbands who could meet the one-half-support test enacted in 1950, when husbands were first recognized as secondary beneficiaries under OASDI. The point here is that a husband who had not reached the age of sixty-two, but who had a minor child in his care, was ineligible for "husband's insurance benefits" even if he satisfied the one-half-support requirement.)

I say "at most" simply because nothing in the legislative history suggests that Congress ever considered whether a man in Richard Cooper's position was likely to be dependent on his wife. Indeed, I have found no evidence that Congress ever contemplated the situation of a man who, although he has not reached retirement age, remains at home in order to care for his disabled wife and their minor children. Rather, Congress apparently focused on the converse situation:

> "The needs of the family of a disability insurance beneficiary are as great as, or greater than, the needs of the family of an old-age insurance beneficiary. Although the wife of a disability insurance beneficiary will usually be younger (and so might be presumed more able to work and help support the family), the dependent children of the disability insurance beneficiary are also younger, making it desirable that the mother remain in the home. It is reasonable to assume, also, that in a great many cases the care which the disabled person requires makes it difficult, if not impossible, for the wife to increase the family income by working. In addition, a person receiving disability insurance benefits frequently has high medical expenses."

H.R.Rep. No. 2288, 85th Cong., 2d Sess. 12–13 (1958).

Although the evidence on this point is hardly compelling, I shall assume for present purposes that Congress, in creating the challenged classification, proceeded on the unstated premise that husbands of disabled wage earners were highly unlikely to be dependent on their wives, at least until they reached retirement age. *See Califano v. Goldfarb, supra,* 430 U.S. at 223 n.9, 97 S.Ct. 1021 (Stevens, J., concurring in the judgment). The resulting statutory scheme, it seems to me, is nevertheless not "substantially related" to the accomplishment of the legislative purpose, *i. e.,* the provision of benefits to dependent spouses of disabled wage earners.

First, this disparate treatment of husbands and wives is (by hypothesis) based on conventional notions of their respective roles in the labor force and in the home. Whether or not this congressional premise accurately reflected the social and economic realities of 1958, the Secretary has made no effort here to show that it even approximates current conditions. Certainly such generalizations continue to lose force, year by year, as the rate of labor-force participation of married women continues to grow.[16] *See, e. g., Weinberger v. Wiesenfeld,* 420 U.S. 636, 643 n.11, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

Second, the statute works an absolute denial of benefits on the basis of gender, rather than being "carefully tuned to alternative considerations." *Mathews v. Lucas,* 427 U.S. 495, 513, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Unlike the provisions invalidated in *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (plurality opinion), the provisions at issue here do not merely favor women with a presumption of dependency while requiring similarly situated men to prove that they are actually dependent. Rather, these provisions, like those invalidated in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), go further. They conclusively deny "husband's insurance benefits" to husbands in Richard Cooper's situation, without permitting them to prove that they are

---

**16.** *See* Report of the HEW Task Force on the Treatment of Women Under Social Security 84 (1978) (54% of married women under age 55 worked in 1977, compared with 34% in 1960).

in fact dependent upon their wives. Similarly situated wives, on the other hand, are automatically entitled to "wife's insurance benefits," and need not prove that they are dependent upon their husbands.

■ For these reasons, I cannot accept the Secretary's first argument in support of the statutory classification. The generalization that husbands in Richard Cooper's situation are less likely to be dependent on their spouses than are similarly situated wives is insufficient to support the gender-based discrimination that is challenged here. *See* discussion *supra.*

■ The Secretary also defends the challenged provisions on the ground that they represent so-called "benign discrimination" in favor of women. In focusing on those spouses of disabled wage earners who have not reached retirement age, he argues, Congress "recognized that women are more likely to have devoted their lives to child rearing and homemaking and may not have attained the skills necessary to gain employment in the job market." Defendant's Brief in Support of His Motion for Summary Judgment (Document No. 18) at 9. Acting on this recognition, Congress deliberately extended to wives, but not to husbands, an additional basis for entitlement to secondary benefits. In short, the Secretary would liken the challenged provisions to the "benign discrimination" upheld in several Supreme Court decisions. *See Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (per curiam); *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

I find the Secretary's argument unpersuasive. To begin with, "the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975) (footnote omitted), *quoted with approval in Califano v. Webster*, 430 U.S. 313, 317, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977) (per curiam). And an examination of the legislative history here refutes any claim that these provisions were "deliberately enacted to compensate for particular economic disabilities suffered by women." *Califano v. Webster*, *supra*, 430 U.S. at 320, 97 S.Ct. at 1196. The pertinent portions of the history of both the 1950 and the 1958 amendments confirm that Congress sought to provide secondary benefits for *dependent* spouses of retired or disabled wage earners, and that it simply viewed wives who had not reached retirement age, but who had minor children in their care, as dependent spouses. *See* H.R.Rep. No. 2288, 85th Cong., 2d Sess. 5, 12–13, 52 (1958); H.R.Rep. No. 1300, 81st Cong., 1st Sess. 56 (1949).

It might be thought that Congress viewed such wives as dependent precisely *because* they had devoted themselves to child-rearing and homemaking, so that they were unprepared to suddenly enter the labor force. But the legislative history of the 1958 amendments proves the contrary. In at least three discussions of the financial predicament facing a disabled wage earner's family, one finds a recognition that the wife might enter the labor force in order to alleviate the hardship. Nowhere is the objection raised that the wife would be unprepared to suddenly enter the labor force. Rather, in each case, the point is made that the wife would be needed in the home, and would *therefore* be unable to help out the family by working. Thus, Representative Mills, the floor manager of the bill in the House of Representatives, noted that a disabled worker's household "is generally burdened by heavy medical expenses, and the wife can seldom seek employment because she is needed at home to care for her husband and children." 104 Cong.Rec. 15,734 (1958). The House and Senate committee reports on the bill each contain substantially similar observations. *See* H.R.Rep. No. 2288, 85th Cong., 2d Sess. 12–13 (1958); S.Rep. No. 2388, 85th Cong., 2d Sess. (1958),

*reprinted in* [1958] U.S.Code Cong. & Admin.News, pp. 4218, 4228. In short, the legislative history itself undercuts any argument that the challenged provisions here stemmed from a "conscious purpose" to compensate women for past economic discrimination. *Califano v. Goldfarb, supra,* 430 U.S. at 221, 97 S.Ct. 1021 (Stevens, J., concurring in the judgment).

Moreover, even if the legislative history alone were not dispositive, the statutory scheme itself suggests that no such compensatory purpose underlay this legislative classification. To put it simply, the "fit" between the class of wives who assertedly were the intended beneficiaries here and the class of wives who actually benefit from this classification is so loose that the argument based on a hypothetical compensatory purpose becomes quite weak indeed. Undoubtedly, *some* wives who have not reached retirement age, but who are nevertheless unprepared to enter the labor force when their husbands become disabled, actually benefit from the statutory "presumption" of dependency because they have minor children in their care. On the other hand, it is safe to assume that many other wives, although equally unprepared to begin working, no longer have minor children in their care at the time their husbands become disabled. Still other wives may have in their care children who are within a year or two of the age of majority. Wives in either of these categories, of course, receive little or nothing by way of "wife's insurance benefits" until they turn sixty-two, although they would seem to fall squarely within the compensatory purposes assertedly served by the statutory classification. Thus, the statutory classification is markedly underinclusive with respect to the asserted compensatory purpose. Moreover, the classification is overinclusive as well, for many wives who are *not* economically dependent on their husbands will fall within the statutory criteria for "wife's insurance benefits" simply because they have minor children in their care. These considerations undermine the Secretary's "benign discrimi-

nation" argument insofar as it rests on a hypothetical compensatory purpose.

For these reasons, then, I conclude that sections 202(b)(1) and 202(c)(1) of the Social Security Act, taken together, deny Richard Cooper and the unnamed class members equal protection of the laws by denying them "husband's insurance benefits" because of their gender. *Accord, Schwecke v. Califano,* Unempl. Ins. Rep. (CCH) ¶ 15,554 (E.D.Wash. Jan. 25, 1978). In light of my determination that the statutory classification upon which the Secretary relied in denying the class members' claims for "husband's insurance benefits" is unconstitutional, it follows that plaintiffs' motion for summary judgment should be granted and that the Secretary's request for summary judgment must be denied.

REMEDY

As I have already noted, the complaint requests injunctive and declaratory relief, as well as an award of retroactive benefits back to the date of the original applications for benefits. The Secretary, however, contends that section 205(g) of the Social Security Act does not authorize such relief, and that the only relief available under that section is "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (1976).

In *Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976), the Supreme Court declined to decide whether injunctive relief is available under section 205(g), noting that the question was "difficult and perhaps close." 427 U.S. at 530, 96 S.Ct. 2771. However, the Court of Appeals for the Third Circuit has stated that "a district court has the power to enter an injunctive decree under [section 205(g)]." *Mattern v. Mathews,* 582 F.2d 248, 254 n.9 (3d Cir. 1978), *petition for cert. filed sub nom. Califano v. Mattern,* 47 U.S.L.W. 3318 (U.S. Oct. 26, 1978). *Accord, e. g., Norton v. Mathews,* 427 U.S. 524–35, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) (Stevens, J., dissenting). *Contra, Brew v. Mathews,* 425

F.Supp. 727 (E.D.Pa.1977) (three-judge court). Accordingly, I start from the premise that injunctive relief is available, and I shall consider only whether such relief would be appropriate here.

■ With respect to those class members, including Richard Cooper, whose claims were finally denied following exhaustion of administrative remedies between January 10, 1978 and December 28, 1978, inclusive, the relief specifically authorized by section 205(g) appears to be adequate. Thus, I see no need for any relief beyond a judgment reversing the Secretary's decisions with respect to those class members. Plaintiffs have not suggested that the Secretary will ignore such a judgment, or that mandatory injunctive relief is otherwise necessary to secure for them the benefits they were wrongfully denied. Accordingly, I find no justification for the issuance of injunctive relief with respect to their claims.

On the other hand, injunctive relief *is* appropriate with respect to those class members whose claims have been denied but are subject to further consideration by the Secretary. As I pointed out in my discussion of waiver of the exhaustion requirement, it would be both pointless and unjust to permit the Secretary to continue to apply the unconstitutional classification when he takes further action on claims filed by similarly situated husbands. Accordingly, I shall enter an order enjoining the Secretary from denying benefits to these husbands on the ground that they have not reached the age of sixty-two.

Plaintiffs also seek an award of retroactive benefits. However, they offer no authority in support of their request. Indeed, plaintiffs have done little more than assert that they are entitled to retroactive benefits. Moreover, even if plaintiffs are correct in their view that they are entitled to such benefits, they have not suggested that the Secretary will wrongfully deny them any benefits to which they are entitled. I therefore see no basis for an award of retroactive benefits.

■ Plaintiffs also seek a declaratory judgment stating that the limitation on "husband's insurance benefits" is unconstitutional. The Secretary again opposes such relief, solely on the ground that section 205(g) does not expressly authorize declaratory relief. Although this argument is not entirely without force in the context of *injunctive* relief, I find it unpersuasive in the context of declaratory relief. To put it simply, declaratory relief has little potential for disrupting the "case-by-case" approach arguably envisioned by Congress in drafting section 205(g). Accordingly, I shall exercise my discretion and enter a declaratory judgment stating that sections 202(b)(1) and 202(c)(1) of the Social Security Act, taken together, deny Richard Cooper and the unnamed class members equal protection of the laws by denying them "husband's insurance benefits" solely on the basis of gender.

## CONCLUSION

For the reasons stated in the foregoing opinion, plaintiffs' motion for class action certification will be granted. In addition, plaintiffs' motion for summary judgment will be granted and the Secretary's request for summary judgment will be denied. Plaintiffs are entitled to the relief described above. I need not resolve the Secretary's motion to dismiss Rose Cooper as a party plaintiff.