**Diana Lee DODSON, Plaintiff,**

v.

**ARKANSAS ACTIVITIES ASSOCIATION et al., Defendants.**

**No. LR–C–77–19.**

United States District Court,
E. D. Arkansas, W. D.

April 4, 1979.

Henry Morgan, Arkadelphia, Ark., for plaintiff.

Ed McCorkle, Arkadelphia, Ark., for defendants.

OPINION

ARNOLD, District Judge.

Diana Lee Dodson brought this suit on January 25, 1977. At the time she was 14 years old and in the ninth grade in the public schools of Arkadelphia, Arkansas. She was a good basketball player and had played on her junior high girls' team in the eighth grade. There are three defendants: the school district in which Diana Lee's school is located, the superintendent of schools of that district, and the Arkansas Activities Association. The Association is a voluntary group of schools, mostly public, to which the Arkadelphia schools belong, together with most, if not all, other public junior and senior high schools in Arkansas.

■■ This suit challenges the constitutionality[1] of the rules for girls' junior and senior high basketball laid down by the defendant Association. There is no question of state action. The Association, although not itself a governmental body, is supported in large part by dues paid by public school districts, and the authorities in the member districts make a practice of abiding by eligibility standards and other rules on athletic subjects made and announced by the Association. The Association in effect exercises a delegated governmental power. It is, at least for present purposes, subject to the Equal Protection Clause of the Fourteenth Amendment.

The question presented is whether the differences in girls' and boys' junior and senior high basketball rules, as laid down by the Association for play in Arkansas, are so lacking in justification, and so injurious to the girls, as to deprive them of the equal protection of the laws. This Court holds that the rules place girl athletes in Arkansas at a substantial disadvantage as compared to boy athletes, that no sufficient justification is offered to justify this disparity, and that the resulting discrimination is unconstitutional. A decree will be entered requiring defendants to erase the differences between the two sets of rules.

Girls' basketball, as played in Arkansas, is markedly different from boys'. It is variously referred to as "half-court," "six on six," or "three on three," while the boys' game is known as "full-court" or "five on five." Girls' teams have six players, while boys' have five. Three girls are forwards, almost always on offense, and three are guards, almost always on defense. No players may cross the center line in the middle of the court. The three guards must always stay in the half of the court where the other team scores. The forwards must stay in the half of the court where their own team scores. Only a forward can shoot or score points. If a guard is fouled, she does not get a free throw. The ball goes to the other end of the court, and one of the forwards does the shooting. In "full court" or "boys' rules," by contrast, all five players may range the full length of the court. They all play defense when the other team has the ball, and they all play offense when their own team has the ball. Any player may shoot and score points, both field goals and free throws.

There are some other differences between the two games, but the difference just described is a major one. Arkansas girls simply do not get the full benefit and experience of the game of basketball available to Arkansas boys. Although substitution is possible, and a girl may play both guard and forward at various times, such changes appear to be the exception rather than the rule. Most girls are typed as either a guard or a forward and remain so. A five-person, full-court game requires a more comprehensive and more complex strategy. It also provides more intensive physical training and conditioning, because, if for no other reason, players on a five-person team have to run up and down the full length of the court, not just half of it. Players of the full-court game also learn to shoot from farther out, because there are five opponents, not just three, trying to keep them away from the basket. Various expert witnesses at the trial summarized the effect of these rules on girls in Arkansas. They are "a disservice to the youngsters coming up." (Tr. 64; Dr. Margaret Downing, Professor of Health, Physical Education, and Recreation, Southern Arkansas University.) Girls are "learning half of the game." (Tr. 72; Carolyn Moffitt, Professor of Physical Education at Ouachita Baptist University.)

All this might not matter so much were it not for the effects on the girls after graduation. Those whose ambition it is to play basketball in college, perhaps even on scholarship, are at a marked disadvantage. College basketball is full-court, for women as

1. The complaint also claimed a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* This claim is rejected. There is no evidence in this record that any "educational program or activity" involved here received "Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

well as men. For that matter, almost no one plays half-court any more. Most Arkansas private schools play full-court for boys and girls. International competition is full-court. Every state except Arkansas, Iowa, Oklahoma, and Tennessee is full-court in secondary school. (Texas was apparently in the process of changing when this case was tried. It seems now to play full-court.) If an Arkansas girl wishes to compete for a position on a college team, she must overcome substantial obstacles. Most of her opposition will have played full-court in high school. The lack of training and conditioning, the psychological barrier of the center line, which she has been schooled not to cross, and, in the case of guards, the lack of shooting experience—all these factors make the Arkansas girl less able to compete. The disadvantage is "tremendous" (Tr. 34; Dr. Downing). It takes about a year for a half-court girl with talent to adjust to the difference in games. Even the University of Arkansas does most of its recruiting out of state, for just this reason. "The primary basketball player will be from outside of the state of Arkansas, which will be a disadvantage to those young girls who are in this state going to high school." (Tr. 90; Ruth Cohoon, Women's Athletic Director and Assistant Professor of Health, Physical Education, and Recreation at the University of Arkansas at Fayetteville.)

In view of these disparities a movement understandably arose among some schools to change the rules to permit girls to play full-court. This kind of decision is made by vote of the membership of the Arkansas Activities Association. The vote is by mail ballot. Each "membership" has one vote. A membership is a separate campus or school building under separate administrative control. Arkadelphia, for example, has three memberships. Dues must be paid with respect to each membership to keep it in good standing. If, for example, a single school building under a single principal housed grades seven through twelve, that would be one membership. If the same grades were in two buildings under two separate administrative heads, two memberships could be purchased. The Association had about 508 memberships at the time this case was tried, but only those with girls' basketball teams were entitled to vote on this issue. The record does not disclose how many eligible votes there were on the question. A vote taken in August 1976 was 117 to 114 to change to full-court. This decision was reversed, however, in January 1977 by a vote of 147 to 116. Votes are cast by administrators, either superintendents or principals. Apparently the superintendent in each school district decides whether he or his principals will cast the vote or votes to which his district is entitled.

■ The fact that girls in Arkansas secondary schools are treated differently, or less advantageously, than boys, of course, is not at all conclusive of the claim asserted. The Equal Protection Clause does not forbid differences as such. It remains to ask, what justification is offered for the difference? We lay at once to one side any suggestion that girls are not strong enough, or large enough, to play the orthodox full-court game. No such suggestion is made by any party, and in any event the record is overwhelmingly to the contrary. Both the experience in most other states, and the testimony at the trial of this cause, show beyond doubt that no physiological or anatomical reason makes girls unable, or any less able, to play five on five. Indeed, defendants' counsel expressly stated on the record that no "physiological differences between males and females . . . prohibit females from playing five on five basketball." Tr. 174. Some defense witnesses offered various reasons for preferring half-court: more girls can play, games tend to be higher-scoring (or at any rate more shots are attempted), the center-line barrier requires more agility and skill of movement, and the like. These considerations may have merit in their own way. Half-court may in fact be a better game. But if it's better for the girls, it's better for the boys as well. None of the reasons proffered is at all relevant to a gender-based classification. And significantly, no official of the Association relied at trial on any of these reasons.

The real reason for the difference, and in fact the only operative reason, is simply that girls' rules have always been this way in Arkansas. Lee Cassady, director of the Association, candidly testified as follows:

Q. Do you know why the girls have been classified to play under these certain rules [rules which are different from boys' rules]?

A. In our state it has been kind of a traditional development. It was not done originally for any particular reason, other than that these were the girls' rules that were being played by girls' teams and sponsored by women for girls.

Tr. 195–96.

Other evidence supports Mr. Cassady's conclusion. According to Dr. Downing, when basketball was invented by one Naismith in 1892, girls and women at once became interested in the game, but they played on a court divided into *three* (not just two) equal parts. There were nine players on a team, three in each of the three divisions. Why? Because girls and women wore bustles, long trains, and high starched collars. They just couldn't get up and down the court fast enough. Over the years, the game evolved. Girls and women changed first to half-court, and then, in most states, to full-court.

▮▮▮ What constitutional standard is to be applied? The Supreme Court has recently reaffirmed the standard. In *Orr v. Orr*, —— U.S. ——, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), the Court said:

"To withstand scrutiny" under the equal protection clause, " 'classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.' " *Califano v. Webster,* 430 U.S. 313, 316–317, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977).

—— U.S. at ——, 99 S.Ct. at 1111. It is at once apparent that the justification offered here does not even come close to meeting that test. Simply doing things the way they've always been done is not an "important government objective," if indeed it is a legitimate objective at all. Change for its own sake is no doubt to be avoided, and tradition is a healthy thing. But tradition alone, without supporting gender-related substantive reasons, cannot justify placing girls at a disadvantage for no reason other than their being girls. The Association's decision to go back to half-court may have been reached by a democratic process, at least among school administrators. That circumstance cannot save it from constitutional condemnation. The Equal Protection Clause is a limitation on governmental action, no matter how fair the process that led to it.

It is proper to add a word about what this case is not about. It is not about whether girls could or should play against boys. The question is whether girls are entitled to play full-court against each other. Nor is the case concerned with discrimination between Arkansas girls and, say, Mississippi girls. (Mississippi plays full-court.) That kind of discrimination is not cognizable under the Equal Protection Clause, because it results from the action of two separate sovereigns. The point here is that Arkansas boys are in a position to compete on an equal footing with boys elsewhere, while Arkansas girls, merely because they are girls, are not. Nor does this Court hold that there is a constitutional right to play basketball, or to score points. Arkansas schools have chosen to offer basketball. Having taken that step, they may not limit the game's full benefits to one sex without substantial justification.

This Court is aware that the two precedents most closely in point are to the contrary. *Cape v. Tennessee Secondary School Athletic Ass'n*, 563 F.2d 793 (6th Cir. 1977), *reversing per curiam* 424 F.Supp. 732 (E.D. Tenn.1976); *Jones v. Oklahoma Secondary School Activities Ass'n*, 453 F.Supp. 150 (W.D.Okl.1977). To some degree the record here appears different, because here tradition alone is offered to support the sex-based distinction. To the extent that the reasoning of those cases is contrary to this opinion, this Court respectfully disagrees. They are not binding authority here, and

their reasoning seems, with deference, unpersuasive. *Jones* suggests, for example, that the injury to Oklahoma girls is *de minimis.* It certainly is not *de minimis* to people who play basketball, and a lot of people do. The experts who testified at this trial argued convincingly that the difference between half-court and full-court is, within the context of the game of basketball as it has developed in history up to the present time, of major significance. This is not to say that basketball is of equal dignity in the constitutional hierarchy with freedom of speech and academic inquiry, or that athletics is as important to an educational program as academics. This Court holds only that school authorities, once having adopted the maxim *mens sana in corpore sano,* must extend the benefits of physical training with a reasonably even hand.

A permanent injunction will issue as prayed for in the complaint.

IT IS SO ORDERED this 4th day of April, 1979.

## JUDGMENT

This cause having come on for trial to the Court on October 3, 1977; the parties have stipulated that the undersigned might decide the case based upon the briefs and a transcript of the trial; a transcript having been ordered, prepared, and, on February 1, 1979, filed with the Court; and the Court having filed its Opinion containing findings of fact and conclusions of law;

It is by the Court this 4th day of April, 1979, CONSIDERED, ORDERED, ADJUDGED, and DECREED,

That the defendants, and each of them, their agents, servants, and employees, and all persons acting in concert with them, be, and they are hereby, permanently enjoined and restrained from enforcing as to girls playing junior and senior high school basketball in Arkansas, any rules different from those enforced as to boys.

And that plaintiff do have and recover of and from the defendants, jointly and severally, judgment for her costs expended herein, together with interest at the rate of ten per centum per annum, for which let execution issue at the time and in the manner provided by law.