The Honorable Tim Wooldridge State Representative 100 College Drive Paragould, Arkansas 72450
Dear Representative Wooldridge:
This is in response to your request for an opinion on whether the Executive Committee of the Northeast Arkansas (NEA) invitational basketball tournament unlawfully discriminates against girls when it schedules early-round games between girls' teams on a court having accommodations for fewer spectators than the court on which early-round games between boys' teams are played. You state that such arrangements are made because fewer spectators attend the girls' games and both courts must be used in order to complete the tournament in the time available, in light of the number of teams participating.
In my opinion, the answer to your question likely is "no."
While you state that the Executive Committee is elected, you do not state by whom it is elected, nor do you identify the entity or organization of which the Executive Committee is, I presume, the governing body. The equal protection clause of the Fourteenth Amendment to the Constitution of the United States applies only to the states and persons acting under the authority of a state. United States v. Guest, 383 U.S. 745 (1966). Likewise, article 2, section 3, of the Constitution of Arkansas, our state constitutional equal protection clause, does not constrain the actions of private parties not acting under the authority of the State of Arkansas or a political subdivision thereof. See Brandt v. St. VincentInfirmary, 287 Ark. 431, 701 S.W.2d 103 (1985); cf. Lubin v. CrittendenHosp. Ass'n, 295 Ark. 429, 748 S.W.2d 663 (1988) (addressing a due process claim under Ark. Const. art. 2, §§ 2 and 3). I assume for purposes of this opinion that the Executive Committee is the governing body of a governmental entity, an entity that exercises a delegated governmental power (see Dodson v. Arkansas Activities Ass'n, 468 F. Supp. 394 (E.D. Ark. 1979)), or an entity otherwise acting under color of state law, and that state action sufficient to invoke the equal protection clauses of the Constitutions of the United States and Arkansas is therefore present.
Laws[1] making classifications on the basis of gender are subject to scrutiny by the courts under the equal protection clauses.[2] See,e.g., Lehr v. Robertson, 463 U.S. 248 (1983); Mississippi University forWomen v. Hogan, 458 U.S. 718 (1982); Medlock v. Fort Smith ServiceFinance Corp., 304 Ark. 652, 803 S.W.2d 930 (1991). Gender-based classifications are examined under neither the "strict scrutiny" test applicable to laws interfering with the exercise of a fundamental right or operating to the disadvantage of a suspect class, nor the "rational basis" test applicable to most classifications involving neither a fundamental right nor a suspect class. Rather, an intermediate level of scrutiny, demanding that the classification serve an important governmental objective and be substantially related to the achievement of the objective, is employed in the examination of gender-based classifications. See, e.g., Lehr v. Robertson, 463 U.S. 248 (1983); Orrv. Orr, 440 U.S. 268 (1979); Conser v. Biddy, 274 Ark. 367,625 S.W.2d 457 (1981).
This standard has in fact been applied in a case involving girls' basketball in Arkansas. In Dodson v. Arkansas Activities Ass'n,468 F. Supp. 394 (E.D. Ark. 1979), the court held that rules permitting Arkansas public high school girls to play only half-court basketball, while dictating the full-court game for boys, were in violation of the equal protection clause. The court noted that girls wishing to continue playing basketball in college (where the game is full-court) were at a significant disadvantage as compared to girls who had played full-court basketball in high school. After stating the standard described above, the court concluded that the defendants, offering up only tradition as justification, had not demonstrated any important governmental objective to support the rules difference.
In a case somewhat analogous to your request, the standard has also been applied to a situation involving disparities between the sexes in the allocation of finite resources available for sports. In Striebel v.Minnesota State High School League, 321 N.W.2d 400 (Minn. 1982), the court held that the scheduling of separate seasons for girls' and boys' teams in the same sport was not a violation of equal protection where adequate facilities were not available to hold the seasons simultaneously and neither season was "substantially better" than the other.
Striebel can be distinguished, of course, from the situation described in your request. There, additional facilities simply were unavailable, and the governmental body determined to use the same facilities at different times to accommodate both girls' and boys' teams. In the case of the NEA tournament, the Executive Committee has determined to use the additional facilities that are available, rather than schedule separate girls' and boys' tournaments at different times. Here, the question arises whether, in the language of Striebel, the larger basketball facility is "substantially better" than the smaller. Presumably, those items used for playing the game itself (i.e., the floors, backboards, rims, nets, and balls) are substantially identical in the two facilities; the difference is in the number of seats available for spectators. This perspective suggests an argument that it is not the female participants who are being discriminated against, but rather the individuals who attend the early-round girls' games. If this argument were accepted, no fundamental right, suspect class or quasi-suspect class would be implicated, and the Executive Committee's classification would be upheld under the "rational basis" test if it rationally furthers a legitimate governmental purpose, objective, or interest. See Exxon Corp. v. Eagerton, Ala., 462 U.S. 176
(1983); Howard v. City of Fort Smith, 311 Ark. 505, 845 S.W.2d 497
(1993). I assume for purposes of this opinion, however, that a court would conclude that the Executive Committee's classification is of the participants rather than the spectators.
It is my opinion that the Executive Committee's scheduling practices likely would pass judicial scrutiny under the intermediate standard applied in cases of gender discrimination. Your request states that if the early-round boys' games were scheduled for the smaller facility, "[t]here would not be enough seating available to accommodate those who wish to see the boys' games." I assume that the accommodation of each member of the public who wishes to attend a particular game, regardless of the sex of that game's participants, is one goal of the Executive Committee, and it seems to me that that objective is indeed "important" in the context of a basketball tournament. To the extent the Executive Committee can demonstrate that crowds attending a significant number of early-round boys' games could not be accommodated at the smaller facility, and that crowds attending early-round girls' games have uniformly been accommodated at the smaller facility, I believe that the Executive Committee will be justified in believing that its scheduling practices are substantially related to the achievement of its objective of accommodating all persons wishing to attend the tournament.
I would caution that the determinations about "important governmental objectives" and a classification's "substantial relation" to those objectives, which must be made in equal protection cases, are predominantly subjective in nature, and there can be no assurance that a court would reach the same conclusion as do I.
It would appear that Title IX of the Education Amendments of 1972 likely would not restrain the actions of the Executive Committee, as I assume that the entity of which the Executive Committee is the governing body is not a recipient of "federal financial assistance" within the meaning of that phrase as used in 20 U.S.C. § 1681.
[Finally, I believe the Executive Committee might revise its scheduling policies to achieve its objective without making classifications on the basis of the participants' sex. This might be done by assigning games to the two different floors solely on the basis of expected attendance, perhaps projecting attendance on the basis of past experience. I have no way of knowing, but it seems likely that an early-round girls' game between two large schools located near the tournament site might draw more fans than an early-round boys' game between two small schools located at greater distances from the tournament site. A scheduling scheme based expressly upon projected attendance, rather than upon the participants' sex as a proxy for expected attendance, would result in the scheduling of that hypothetical girls' game in the larger facility and should, to the extent followed consistently and in good faith, dispel any perception of unfair discrimination between the sexes.]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Since I assume that the Executive Committee's actions are "state actions" within the meaning of that phrase as used in equal protection jurisprudence, it follows that its tournament scheduling decisions are "laws" for purposes of analyzing whether "equal protection of the law" has been afforded.
[2] The Supreme Court of Arkansas has not announced any difference in the protections afforded by the equal protection clauses of the Constitutions of the United States and of Arkansas, and I assume for purposes of this opinion that such protections are co-extensive.