The Honorable Charles L. Ormond State Representative 1500 View Street Morrilton, AR 72110-3725
Dear Representative Ormond:
I am writing in response to your request for my opinion on the following question:
 Is it lawful for the Legislature to enact laws that allow a private or non-elected body to issue rules and regulations that public institutions must follow or adopt? Example: Arkansas Activities Association ["AAA"] rules that public schools must follow; such as a student under the freedom of choice not being allowed to play basketball if the school he or she is leaving will not approve, even after all parties have signed a statement that there was no recruitment involved.
RESPONSE
In my opinion, nothing precludes the government from acknowledging the rule-making authority of an organization like the AAA, whose school-district members have voluntarily elected to participate in its activities. See, e.g., A.C.A. § 6-22-107 (noting the character of the AAA as a voluntary association of member districts). My predecessor offered the following description of the AAA in the attached Ark. Op. Att'y Gen. No. 92-107:
 [T]he Arkansas Activities Association, or "AAA," was originally founded in 1904 by seven high schools and colleges and was called the "Arkansas State Athletic Association." In 1912, the high schools separated from the colleges and became the "Arkansas Athletics Association." Membership increased rapidly, and eventually the name of the organization was changed to the "Arkansas Activities Association." It is a "nonprofit" "association" of member school districts. The Association accepts members who sign written agreements to be governed by, and abide by, the rules of the Association. It exists by virtue of this "association" of school districts, and it is through this membership, and written agreement with school districts, that the AAA gains its power to determine educational standards and residency requirements for student participation in AAA activities. Essentially, the Association represents agreement of the member school districts as to the conduct of school athletics and activities.
With respect to the power of the AAA to dictate rules to its members, my predecessor offered the following analysis, with which I fully concur:
 [M]embership in the AAA is not mandatory. Each school district may choose whether to become a member and whether to sign the agreement to abide by the rules of the Association. School districts across the state may choose not to be a member of the Association, but this choice will give them no right to participate in AAA sponsored tournaments. In short, if the tournaments are sponsored and funded by the AAA, it may choose the criteria for the participants, as long as it does so in compliance with constitutional principles. See Arkansas Activities Association v. Meyer, 304 Ark. 718, 805 S.W.2d 58 (1991). It has also recently been stated that" [i]t legitimately falls within the purview of a voluntary association like the AAA, acting in conjunction with the schools, to regulate such activities." 304 Ark. at 722-723.
In Meyer, the court made the following observations regarding the relationship between the AAA and the state:
 A threshhold question is whether the allegations of constitutional deprivation involve state action. Here, we are concerned with a voluntary association; while it is not a state agency, the association has significant contacts and relationships with the public schools of this state. For example, the AAA membership consists of the superintendents and principals of the 495 member schools who are responsible for adopting the rules which regulate interscholastic activities at those schools. Under such circumstances state action has been found to exist. See, e.g., Barnhorst v. Missouri State High School Activities Ass'n, 504 F. Supp. 449 (W.D. Mo. 1980). We hold that it exists in this case due to the close and symbiotic relationship between the AAA and the Arkansas public school system.
* * *
 [T]here is clearly no constitutional right to play sports or engage in other school activities. See Barnhorst v. Missouri State High School Activities Ass'n, supra. It legitimately falls within the purview of a voluntary association like the AAA, acting in conjunction with the schools, to regulate such activities. However, to the extent that rules are adopted by the AAA they must satisfy constitutional principles as applied and may not impinge on due process or equal protection rights. A student has the right to have his or her request to participate in student athletics reviewed under rules that are constitutional. Id.
304 Ark. at 722-23. In Ark. Op. Att'y Gen. No. 88-101, my predecessor further remarked:
 The United States District Court, Eastern District of Arkansas, has specifically stated that the Arkansas Activities Association is ". . . not itself a governmental body." Dodson v. Arkansas Activities Ass'n, 468 F. Supp. 394, 396 (1979). It should be noted, however, that the District Court in that case did go on to state that the Association ". . . in effect exercises a delegated governmental power." Id. The action of the Association in regulating athletics was therefore deemed to be state action for purposes of the Fourteenth Amendment.
The question of whether the student described in your request was impermissibly deprived of his or her constitutional rights is one of fact that this office is neither equipped nor authorized to address. An aggrieved student's recourse under the circumstances you have described would be to exhaust the appeals available under AAA regulations and then to repair to the courts.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh