CALIFANO, SECRETARY OF HEALTH, EDUCATION,
AND WELFARE *v.* WEBSTER

No. 76–457.   Decided March 21, 1977

314

PER CURIAM.

Under § 215 of the Social Security Act, as added, 64 Stat. 506, and amended, 42 U. S. C. § 415 (1970 ed. and Supp. V), old-age insurance benefits are computed on the basis of the wage earner's "average monthly wage" earned during his "benefit computation years" which are the "elapsed years" (reduced by five) during which the wage earner's covered wages were highest. Until a 1972 amendment, "elapsed years" depended upon the sex of the wage earner. Section 215 (b)(3) prescribed that the number of "elapsed years" for a male wage earner would be three higher than for an otherwise similarly situated female wage earner; for a male, the number of "elapsed years" equaled the number of years that elapsed after 1950 and before the year in which he attained age 65; for a female the number of "elapsed years" equaled the number of years that elapsed after 1950 and before the year in which she attained age 62.[1] Thus, a male born in 1900

---

[1] Under § 202 (a) of the Act, 42 U. S. C. § 402 (a) (1970 ed. and Supp. V), a fully insured individual who has reached retirement age is entitled upon application to a monthly old-age insurance benefit equal to his "primary insurance amount."

Section 215 (a) of the Act, 42 U. S. C. § 415 (a) (1970 ed. and Supp. V), sets out a table for determining the primary insurance amount. This

would have 14 "elapsed years" on retirement at age 65 but a female born in the same year would have only 11.[2]  Accordingly, a female wage earner could exclude from the computa-

_____

amount is based on an individual's "average monthly wage" as defined in § 215 (b) of the Act, 42 U. S. C. § 415 (b) (1970 ed. and Supp. V).

Before it was amended in 1972, § 215 (b) of the Act, 42 U. S. C. § 415 (b), provided in part:

"(1) . . . [A]n individual's 'average monthly wage' shall be the quotient obtained by dividing—

"(A) the total of his wages paid in and self-employment income credited to his 'benefit computation years' (determined under paragraph (2)), by

"(B) the number of months in such years.

"(2)(A) The number of an individual's 'benefit computation years' shall be equal to the number of elapsed years (determined under paragraph (3) of this subsection), reduced by five; except that the number of an individual's benefit computation years shall in no case be less than two.

"(B) An individual's 'benefit computation years' shall be those computation base years, equal in number to the number determined under subparagraph (A), for which the total of his wages and self-employment income is the largest.

"(C) For purposes of subparagraph (B), 'computation base years' include only calendar years in the period after 1950 and prior to the earlier of the following years—

"(i) the year in which occurred . . . the first month for which the individual was entitled to old-age insurance benefits, or

"(ii) the year succeeding the year in which he died.

. . . . .

"(3) For purposes of paragraph (2), the number of an individual's elapsed years is the number of calendar years after 1950 . . . and before—

"(A) in the case of a woman, the year in which she died or, if it occurred earlier but after 1960, the year in which she attained age 62.

. . . . .

"(C) in the case of a man who has not died, the year occurring after 1960 in which he attained (or would attain) age 65."

[2] Congress eliminated the distinction in 1972.  As amended by § 104 (b), 86 Stat. 1340, 42 U. S. C. § 415 (b)(3) (1970 ed., Supp. V), now provides:

"[T]he number of an individual's elapsed years is the number of calendar

tion of her "average monthly wage" three more lower earning years than a similarly situated male wage earner could exclude. This would result in a slightly higher "average monthly wage" and a correspondingly higher level of monthly old-age benefits for the retired female wage earner.[3]   A single-judge District Court for the Eastern District of New York, on review under § 205 (g) of the Social Security Act, 42 U. S. C. § 405 (g), of a denial, after hearing, of appellee's request that the more favorable formula be used to compute his benefits, held that, on two grounds, the statutory scheme violated the equal protection component of the Due Process Clause of the Fifth Amendment: (1) that to give women who reached age 62 before 1975 greater benefits than men of the same age and earnings record was irrational,[4] and (2) that in any event the 1972 amendment was to be construed to apply retroactively, because construing the amendment to give men who reach age 62 in 1975 or later the benefit of the 1972 amendments but to deny older men the same benefit would render the amendment irrational, and therefore unconstitutional.  413 F. Supp. 127 (1976).  We reverse.

To withstand scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, "classifications

---

years after 1950 . . . and before the year in which he died, or if it occurred earlier but after 1960, the year in which he attained age 62."

The amendment, however, does not apply to men who reached age 62 before its effective date in 1972, and so the former statute continues to govern the determination of this and some other claims of male wage earners.

[3] For example, in this case, the District Court found that appellee was awarded a monthly benefit of $185.70, but that a similarly situated female wage earner would have been awarded $204 per month.  413 F. Supp. 127, 128.

[4] Four other federal courts have reached a contrary conclusion.  *Gruenwald* v. *Gardner*, 390 F. 2d 591 (CA2), cert. denied *sub nom. Gruenwald* v. *Cohen*, 393 U. S. 982 (1968); *Kohr* v. *Weinberger*, 378 F. Supp. 1299 (ED Pa. 1974), vacated on other grounds, 422 U. S. 1050 (1975); *Polelle* v. *Secretary of HEW*, 386 F. Supp. 443 (ND Ill. 1974); *McEvoy* v. *Weinberger*, CCH Unempl. Ins. Rep. ¶ 17,414 (SD Fla., Aug. 28, 1973).

by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig* v. *Boren,* 429 U. S. 190, 197 (1976). Reduction of the disparity in economic condition between men and women caused by the long history of discrimination against women has been recognized as such an important governmental objective. *Schlesinger* v. *Ballard,* 419 U. S. 498 (1975); *Kahn* v. *Shevin,* 416 U. S. 351 (1974). But "the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme." *Weinberger* v. *Wiesenfeld,* 420 U. S. 636, 648 (1975). Accordingly, we have rejected attempts to justify gender classifications as compensation for past discrimination against women when the classifications in fact penalized women wage earners, *Califano* v. *Goldfarb, ante,* at 209 n. 8; *Weinberger* v. *Wiesenfeld, supra,* at 645, or when the statutory structure and its legislative history revealed that the classification was not enacted as compensation for past discrimination. *Califano* v. *Goldfarb, ante,* at 212–216 (plurality opinion), 221–222 (STEVENS, J., concurring in judgment); *Weinberger* v. *Wiesenfeld, supra,* at 648.

The statutory scheme involved here is more analogous to those upheld in *Kahn* and *Ballard* than to those struck down in *Wiesenfeld* and *Goldfarb.* The more favorable treatment of the female wage earner enacted here was not a result of "archaic and overbroad generalizations" about women, *Schlesinger* v. *Ballard, supra,* at 508, or of "the role-typing society has long imposed" upon women, *Stanton* v. *Stanton,* 421 U. S. 7, 15 (1975), such as casual assumptions that women are "the weaker sex" or are more likely to be child-rearers or dependents. Cf. *Califano* v. *Goldfarb, supra; Weinberger* v. *Wiesenfeld, supra.* Rather, "the only discernible purpose of [§ 215's more favorable treatment is] the permissible one of redressing our society's longstanding disparate treatment of women." *Califano* v. *Goldfarb, ante,* at 209 n. 8.

The challenged statute operated directly to compensate women for past economic discrimination. Retirement benefits under the Act are based on past earnings. But as we have recognized: "Whether from overt discrimination or from the socialization process of a male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs." *Kahn* v. *Shevin,* 416 U. S., at 353. See generally *id.*, at 353–354, and nn. 4–6. Thus, allowing women, who as such have been unfairly hindered from earning as much as men, to eliminate additional low-earning years from the calculation of their retirement benefits works directly to remedy some part of the effect of past discrimination.[5] Cf. *Schlesinger* v. *Ballard, supra,* at 508.

The legislative history of § 215 (b)(3) also reveals that Congress directly addressed the justification for differing treatment of men and women in the former version of that section and purposely enacted the more favorable treatment for female wage earners to compensate for past employment discrimination against women. Before 1956, the sexes were treated equally by § 215 (b)(3); the computation it required turned on the attainment of "retirement age," which was then defined in 42 U. S. C. § 416 (a) (1952 ed.) as 65 for both sexes.[6] In 1956, however, retirement age was redefined as 62 for women and 65 for men, Social Security Amendments of

---

[5] Even with the advantage provided by former § 215 (b)(3), women on the average received lower retirement benefits than men. "As of December 1972, the average monthly retirement insurance benefit for males was $179.60 and for females, $140.50." *Polelle* v. *Secretary of HEW, supra,* at 444 (emphasis omitted).

[6] At that time, the calculation of the "average monthly wage" under § 215 (b) was somewhat different from the scheme set out in n. 1, *supra,* which was not adopted until Social Security Amendments of 1960, § 303 (a), 74 Stat. 960. The role of § 215 (b)(3) in the computation was similar under the old scheme, however, and the differences between the old and new methods of computation are essentially irrelevant to the effect of the 1956 change in the definition of retirement age on § 215 (b)(3).

1956, § 102 (a), 70 Stat. 809, thereby changing the calculation under § 215 (b)(3). A House Report emphasizes that this reduction in the retirement age for women was purposely made to remedy discrimination against women in the job market:

> "Your committee believes that the age of eligibility should be reduced to 62 for women workers. . . . A recent study by the United States Employment Service in the Department of Labor showed that age limits are applied more frequently to job openings for women than for men and that the age limits applied are lower." H. R. Rep. No. 1189, 84th Cong., 1st Sess., 7 (1955).[7]

The effect of this change on § 215 (b)(3) was also discussed in connection with the amendment of that section in 1961.[8] Social Security Amendments of 1961, § 102 (d)(2), 75 Stat. 135. During the hearings on that amendment Representative Watts asked why a woman would draw more benefits than a similarly situated man. After it was noted that this did not change the law as it had existed since 1956, Representative Boggs confirmed that the difference in treatment was not inadvertent:

> "If I may interrupt, I think we went into this at great length some years ago when we adopted the 62-year provision for women and the theory was that a woman at that age was less apt to have employment opportunities than a man and despite the fact of some statistics to the effect

---

[7] Congress deliberately adopted the change notwithstanding the argument urged upon it that reducing the retirement age would not benefit women. S. Rep. No. 2133, 84th Cong., 2d Sess., 14–15 (1956).

[8] In 1961, in connection with the extension of reduced retirement benefits to men at age 62, the definition of retirement age in 42 U. S. C. § 416 (a) was repealed, and the differing ages for the computation of "elapsed years" under § 215 (b)(3) were written explicitly into that section for the first time. §§ 102 (c)(1), 102 (d)(2), 75 Stat. 134, 135. It was at that time that § 215 (b)(3) took on the form it was to retain until 1972. See nn. 1–2, *supra.*

that women live longer than men, I think the other fact is equally commanding, so there is some justification for a distinction between men and women." Executive Hearings on Social Security Amendments of 1961, before the House Committee on Ways and Means, 87th Cong., 1st Sess., 146–147 (1961).

Thus, the legislative history is clear that the differing treatment of men and women in former § 215 (b)(3) was not "the accidental byproduct of a traditional way of thinking about females," *Califano* v. *Goldfarb, ante,* at 223 (STEVENS, J., concurring in judgment), but rather was deliberately enacted to compensate for particular economic disabilities suffered by women.

That Congress changed its mind in 1972 and equalized the treatment of men and women does not, as the District Court concluded, constitute an admission by Congress that its previous policy was invidiously discriminatory. 413 F. Supp., at 129. Congress has in recent years legislated directly upon the subject of unequal treatment of women in the job market.[9] Congress may well have decided that "[t]hese congressional reforms . . . have lessened the economic justification for the more favorable benefit computation formula in § 215 (b)(3)." *Kohr* v. *Weinberger,* 378 F. Supp. 1299, 1305 (ED Pa. 1974), vacated on other grounds, 422 U. S. 1050 (1975). Moreover, elimination of the more favorable benefit computation for women wage earners, even in the remedial context, is wholly consistent with those reforms, which require equal treatment of men and women in preference to the attitudes of "romantic paternalism" that have contributed to the "long and unfortunate history of sex discrimination." *Frontiero* v. *Richardson,* 411 U. S. 677, 684 (1973).

Finally, there is no merit in appellee's argument that the failure to make the 1972 amendment retroactive constitutes

---

[9] See, *e. g.,* Equal Pay Act of 1963, 29 U. S. C. § 206 (d); Civil Rights Act of 1964, § 703 (a), 42 U. S. C. § 2000e–2 (a).

discrimination on the basis of date of birth. Old-age benefit payments are not constitutionally immunized against alterations of this kind. *Flemming* v. *Nestor,* 363 U. S. 603 (1960). Congress expressly reserved "[t]he right to alter, amend, or repeal any provision" of the Act, 42 U. S. C. § 1304, and the Fifth Amendment "does not forbid . . . statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time." *Sperry & Hutchinson Co.* v. *Rhodes,* 220 U. S. 502, 505 (1911). It follows that Congress may replace one constitutional computation formula with another and make the new formula prospective only.

*Reversed.*

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE STEWART, MR. JUSTICE BLACKMUN, and MR. JUSTICE REHNQUIST join, concurring in the judgment.

While I am happy to concur in the Court's judgment, I find it somewhat difficult to distinguish the Social Security provision upheld here from that struck down so recently in *Califano* v. *Goldfarb, ante,* p. 199. Although the distinction drawn by the Court between this case and *Goldfarb* is not totally lacking in substance, I question whether certainty in the law is promoted by hinging the validity of important statutory schemes on whether five Justices view them to be more akin to the "offensive" provisions struck down in *Weinberger* v. *Wiesenfeld,* 420 U. S. 636 (1975), and *Frontiero* v. *Richardson,* 411 U. S. 677 (1973), or more like the "benign" provisions upheld in *Schlesinger* v. *Ballard,* 419 U. S. 498 (1975), and *Kahn* v. *Shevin,* 416 U. S. 351 (1974). I therefore concur in the judgment of the Court for reasons stated by MR. JUSTICE REHNQUIST in his dissenting opinion in *Goldfarb,* in which MR. JUSTICE STEWART, MR. JUSTICE BLACKMUN, and I joined.