377 So.2d 335 (1979)
STATE of Louisiana
v.
Kendle L. FULLER.
No. 64869.
Supreme Court of Louisiana.
November 12, 1979.
W. R. Armitage, Jr., Alexandria, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Eddie Knoll, Dist. Atty., Cliffe E. Laborde, Asst. Dist. Atty., for plaintiff-respondent.
DENNIS, Justice.[*]
The question presented in this review of a criminal conviction is whether the criminal neglect of wife statute, La. R.S. 14:74 A(1), which makes it a crime for a husband, but not a wife, with financial means to intentionally fail to support his destitute spouse, violates the Equal Protection Clause of the Fourteenth Amendment.[**] We hold that the gender-based scheme of La.R.S. 14:74 A(1) violates equal protection and reverse the defendant's conviction based thereon. The remainder of the statute, however, is severable and is not affected by our decision.
*336 Defendant, Kendle L. Fuller, was convicted by a district judge of criminal non-support of his wife, La. R.S. 14:74 A(1), and received a suspended jail sentence of six months and probation, conditioned on his monthly payment of $250.00 to support his wife. We granted defendant's application for certiorari to review the constitutional question presented.
Kendle and Judith Mae Fuller were married on May 25, 1978 in Rapides Parish. She left him to go live with her sister in Kansas during July, 1978, returned in August, and left again in September, 1978. A bill of information was filed on February 22, 1979 charging Fuller with intentional failure to support his wife. Before trial Judith Mae Fuller gave birth to a baby, but the defendant was not charged with failure to support the child. Fuller's motion to quash the bill of information on the ground that La. R.S. 14:74 A(1) violates the Equal Protection Clause of the Fourteenth Amendment was denied by the trial judge. After his conviction, Fuller's timely application for writs preserved the constitutional question for our review.
The statutory provision under attack, La. R.S. 14:74 A(1), proscribes the desertion or intentional nonsupport "[b]y a husband of his wife who is in destitute or necessitous circumstances when he has the financial means to provide support," and provides a maximum penalty of imprisonment for six months and a fine of $500. In authorizing punishment of husbands, but not wives, for criminal neglect of spouses, the statutory scheme "provides that different treatment be accorded ... on the basis of ... sex; it thus establishes a classification subject to scrutiny under the Equal Protection Clause." Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). "To withstand scrutiny" under the equal protection clause, "`classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.'" Califano v. Webster, 430 U.S. 313, 316-317, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977). We shall, therefore, examine the governmental objectives which the prosecution argues, or reasonably could argue, are served by the criminal neglect of wife law's statutory scheme.
The prosecution's brief argues first that the statute should be upheld because it "recognizes and appreciates the realities of domestic relations as they presently exist in this State." Despite the prosecution's disclaimer, its argument at bottom is merely a thinly disguised version of Alabama's "preference for an allocation of family responsibilities under which the wife plays a dependent role, and as seeking for their objective the reinforcement of that model among the State's citizens," which was rejected by the Supreme Court as an acceptable governmental objective for gender-based alimony laws. Orr v. Orr, 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306, 319 (1979). It also resembles the argument advanced by the prosecution and rejected by the Supreme Court in Taylor v. Louisiana, 419 U.S. 522, 533, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), that "women as a class serve a distinctive role in society and that jury service would so substantially interfere with that function that the State has ample justification for excluding women from jury service unless they volunteer ...." Id. 419 U.S. at 533, 95 S.Ct. at 699, 42 L.Ed.2d at 700. Actually, the prosecution's argument is the same "old notion" that "generally it is the man's primary responsibility to provide a home and its essentials," which can no longer justify a statute that discriminates on the basis of gender. Stanton v. Stanton, 421 U.S. 7, 10, 95 S.Ct. 1373, 1376, 43 L.Ed.2d 688 (1975). "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas." Id. 421 U.S. at 14-15, 95 S.Ct. at 1378, 43 L.Ed.2d at 695. If the criminal neglect of wife statute is to survive constitutional attack, therefore, it must be validated on some other basis. See Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 1112, 59 L.Ed.2d 306 (1979).
The opinion of this Court in State v. Barton, 315 So.2d 289 (La.1975), suggests another purpose that the statute may serve.
*337 In rejecting a previous equal protection attack upon the wife-neglect crime, the opinion states:
"While it is true that, as noted above, more and more women are abandoning the traditional role of homemaker in favor of commercial employment, the fact remains that, at present, the husband is still invariably the dominant or only means of support for a couple. In achieving the legitimate state objective of protecting the welfare of citizens of this state by prohibiting the desertion or intentional nonsupport of a wife by a husband, the statute similarly treats the vast majority of all those similarly situated. * * *." 315 So.2d at 292.
Thus, this Court declared that the statute's objective is to provide help for needy spouses, using sex as a proxy for need. The prosecution's brief argues that the statute may be validated on this basis or as legislation aimed "at rectification of past discrimination against women which has resulted in their failure to obtain good paying jobs to support themselves, among other things."
The Supreme Court has conceded that "assisting needy spouses is a legitimate and important governmental objective," Orr v. Orr, 440 U.S. at 280, 99 S.Ct. at 1112, 59 L.Ed.2d at 319, and has recognized "[r]eduction of the disparity in economic condition between men and women caused by the long history of discrimination against women... as ... an important governmental objective." Califano v. Webster, 430 U.S. at 317, 97 S.Ct. at 1194, 51 L.Ed.2d at 364. In Orr v. Orr the high court held, however, that an alimony statute which provides for the support of needy wives, but not husbands, cannot survive constitutional attack because the statutory classification is not substantially related to achievement of these governmental objectives.
Orr v. Orr, we feel, is controlling here and requires that we overrule our decision in State v. Barton. In Orr, the Supreme Court, in analyzing Alabama's gender-based alimony statute, held that "even if sex were a reliable proxy for need, and even if the institution of marriage did discriminate against women, these factors still would `not adequately justify the salient features of' Alabama's statutory scheme." 99 S.Ct. at 1113. Since, under Alabama's statute, individualized hearings were held at which the parties' relative financial circumstances were considered, the Supreme Court concluded that there was no reason to use sex as a proxy for need. Not even an administrative convenience rationale exists to justify operating by generalization or proxy, the Court noted, because needy males could be helped along with needy females with little if any additional burden on the state. "`Thus, the gender-based distinction is gratuitous; without it the statutory scheme would only provide benefits to those men who are in fact similarly situated to the women the statute aids, ... and the effort to help those women would not in any way be compromised.'" Id. 99 S.Ct. at 1113. Moreover, in concluding its analysis, the high court held that a gender-based classification which, as compared to a gender-neutral one, generates additional benefits only for those it has no reason to prefer, viz., financially secure wives whose husbands are in need, cannot survive equal protection scrutiny. Id. 99 S.Ct. at 1113.
The Louisiana criminal neglect of wife statute, La. R.S. 14:74 A(1), likewise, cannot survive equal protection challenge, because, even if sex were a reliable proxy for need, and even if the institution of marriage did discriminate against women, these factors would not adequately justify the salient features of our statutory scheme of enforcing a husband's obligation to support his needy wife through criminal sanctions. Under our statute, individualized hearings at which the financial circumstances of the husband and wife are considered already occur; to convict, the prosecution must prove, as essential elements of the crime, that the husband is financially able and that his wife is in destitute or necessitous circumstances. There is no reason, therefore, to use sex as a proxy for need. The gender-based classification is gratuitous and actually produces perverse results. As compared to a gender-neutral law enforcing *338 by criminal sanctions an obligation to support the needy spouse by the spouse able to pay, the present statute gives an advantage only to the financially secure wife whose husband is in need.
Because legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing the stereotypes about the "proper place" of women and their need for special protection, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored. Orr v. Orr, 99 S.Ct. at 1113. As the high court stated in the Orr case:
"* * * Where, as here, the State's compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender-classification and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. And this is doubly so where the choice made by the State appears to redoundif only indirectlyto the benefit of those without need for special solicitude." 99 S.Ct. at 1113-14.
Having found the criminal neglect of wife law, La. R.S. 14:74 A(1) unconstitutional, we reverse the conviction and sentence based thereon and quash the bill of information. This disposition, of course, does not affect the balance of the criminal neglect of family statute, La. R.S. 14:74 A(2)-D, which is clearly severable. See State v. Johnson, 343 So.2d 705 (La.1977).
REVERSED. BILL OF INFORMATION QUASHED.
SUMMERS, C. J., and DIXON, J., dissent.
BLANCHE, J., concurs and hands down reasons.
BLANCHE, Justice (concurring).
I concur in the result but for an entirely different reason. The majority opinion convinces this writer that there is no longer any valid legislative purpose in requiring one spouse to support the other after the marriage has been dissolved.
Chivalry is dead if that was ever a historic reason. The "realities of the domestic relationship" as they are claimed to exist is a myth as women do indeed contribute to the financial support by working outside the home, and it is a fact that the husband can take care of the children of the marriage just as well as the wife, especially if enough funds are generated to place them in a nursery or other child care establishment. Furthermore, the old notion that "generally, it is the man's responsibility to provide a home and its essentials" is just another way of portraying a woman as an inferior, or worse yet, a dependent.
Judicial decisions having denounced every reason considered by the writer as a valid legislative purpose for the present non support laws, I concur in its demise.
NOTES
[*] Chief Judge Paul B. Landry, Retired, participated in this decision as an Associate Justice Ad Hoc.
[**] Subsequent to the alleged offense and prosecution in the instant case, La.R.S. 14:74A was amended to make it a crime for either a husband or a wife, with financial means to intentionally fail to support his destitute spouse. La.Acts, 1979, No. 614.