# IN THE OREGON TAX COURT

## LEWIS
*v.*
## DEPARTMENT OF REVENUE
(TC 1413)

G. Jefferson Campbell, Jr., Foss, Whitty & Roess, Coos Bay, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered June 1, 1981.

## CARLISLE B. ROBERTS, Judge.

Plaintiff has appealed from the defendant's Order No. VL 80-313, dated June 18, 1980. The plaintiff is the widower of a war veteran of the United States. He claimed a partial property tax exemption for the tax year 1979-1980 under the provisions of ORS 307.250 which, in pertinent part, reads as follows:

"Upon compliance with ORS 307.260 [requiring the filing of a timely claim], there shall be exempt from taxation not to exceed $7,500 of the true cash value of the homestead or personal property of any of the following residents of this state:

"(1)   Any honorably discharged veteran of the Spanish-American War, the Philippine Insurrection or the Boxer Rebellion.

"(2)   Any war veteran who is officially certified * * * as having disabilities of 40 percent or more.

"(3)   * * * * *

"(4)   The widow remaining unmarried of a war veteran, but her exemption shall apply only to the period preceding the date of her first remarriage."

The facts are not in dispute. As quaintly stated in the defendant's order: "Had his [plaintiff's] wife been a male veteran and if he were a female, he would have been eligible for a property tax exemption pursuant to ORS 307.250." The county assessor denied the application under the "plain language" rule of construction;[1] i.e., the statute is applicable only to a widow of a war veteran, not a widower.

Plaintiff appealed to the Department of Revenue, contending that denial of his claim for exemption under ORS 307.250 was and is discriminatory on the basis of gender and violates the provisions of Or Const, art I, § 20, the due process provision of the Fifth Amendment and the equal protection clause of the Fourteenth Amendment of the United States Constitution. On advice of counsel, the Department of Revenue concluded that it did not have the authority to hold the statute unconstitutional, following the accepted rule that

---

[1] A first principle in the construction of statutes is that words of common usage are to be given their natural, plain and obvious meaning. *Perez v. State Farm Mutual Ins. Co.,* 289 Or 295, 613 P2d 32 (1980).

administrative agencies are not competent to determine the constitutionality of the statutes under which they act.

ORS 307.250 has a long legislative history.[2] Its first enactment is found in Gen Laws (Or) 1921, ch 165, § 1. This law exempted from taxation the first $1,000 of value of the property "of any honorably discharged union soldier or sailor of the Mexican war, the war of the rebellion or the Indian wars of the state of Oregon, or of the widow remaining unmarried of such soldier or sailor."

Over many years, the reference to the widow has remained substantially unchanged but it is easily perceived that the statute speaks from a day long past. The Nineteenth Amendment to the U. S. Constitution, giving nationwide suffrage to women, had been ratified less than one year before. At that time, our statute books were laden with discriminatory gender provisions which broadly categorized the husband as breadwinner (and master) and treated the wife with a romantic paternalism, without recognition of the realities in specific households.[3] In recent years, the Supreme Court of the United States has had to deal more and more with questions relating to sex discrimination. Questions have been raised, made difficult because of long-established social preconceptions which there is good reason to believe are outmoded. A number of important decisions have been made by the U. S. Supreme Court but not in such a quantity that the analysis of the various factual situations has yet created a full complement of precise guidelines.[4] One of the problems created is reverse discrimination affecting the male.

For example, the Supreme Court has held that although a state tax law discriminates in favor of a certain class (widows), it is not arbitrary if discrimination is founded

---

[2] Gen Laws (Or) 1921, ch 165, § 1; Gen Laws (Or) 1925, ch 37, § 1; Or Laws 1929, ch 405, § 1; Or Laws 1931, ch 70, § 1; Or Laws 1935, ch 391, § 1; Or Laws 1937, ch 34, § 1; Or Laws 1941, ch 440, § 2; Or Laws 1945, ch 412, § 1; Or Laws 1949, ch 168, § 1; Or Laws 1951; ch 596, §§ 1, 2; Or Laws 1953, ch 63, § 3; Or Laws 1955, ch 248, § 1; Or Laws 1961, ch 410, § 5; Or Laws 1969, ch 605, § 55; Or Laws 1971, ch 338, § 1; Or Laws 1973, ch 402, § 7.

[3] *See Frontiero v. Richardson,* 411 US 677, 93 S Ct 1764, 36 L Ed2d 583 (1973).

[4] The difficulty experienced in following the U. S. Supreme Court's fine distinctions in gender cases is illustrated by a comparison of *Califano v. Goldfarb,* 430 US 199, 97 S Ct 1021, 51 L Ed2d 270 (1977), and *Califano v. Webster,* 430 US 313, 97 S Ct 1192, 51 L Ed2d 360 (1977).

upon a reasonable distinction or difference in state policy, not in conflict with the federal Constitution. In *Kahn v. Shevin*, 416 US 351, 94 S Ct 1734, 40 L Ed2d 189 (1974), the court found that Florida had provided for some form of property tax exemption for widows since at least 1885. The current law granted all widows an annual $500 property tax exemption. Kahn, a widower, applied for such exemption but was denied because the statute offered no benefit for widowers. A circuit court held the statute violative of the equal protection clause of the Fourteenth Amendment of the U. S. Constitution but the Florida Supreme Court reversed, finding the classification valid because it had a fair and substantial relation to the object of the legislation, that object being the reduction of disparity between the "economic capabilities of a man and a woman." The U. S. Supreme Court affirmed the Florida Supreme Court.

■       However, in *Frontiero v. Richardson*, 411 US 677, 93 S Ct 1764, 36 L Ed2d 583 (1973), the question presented was the right of a female member of the uniformed armed forces to claim her spouse as a "dependent" for the purpose of obtaining increased quarters, allowances and medical and dental benefits under certain statutes, on an equal footing with male members. Under these statutes, a serviceman could claim his wife as a "dependent" without regard to whether she was in fact dependent upon him for any part of her support. A service woman, on the other hand, could not claim her husband as a "dependent" under these programs unless he was in fact dependent upon her for over half of his support. The U. S. Supreme Court found this provision to be an unconstitutional discrimination against the service woman, in violation of the due process clause of the Fifth Amendment. It determined that the purpose of the statute originally was to attract career personnel through reenlistment. It cited *Reed v. Reed*, 404 US 71, 92 S Ct 251, 30 L Ed2d 225 (1971), to the effect that classifications based upon sex, like classifications based upon race, alienage and national origin, are inherently suspect and must therefore be subjected to close judicial scrutiny. The court stated:

> "There can be no doubt that our Nation has had a long and unfortunate history of sex discrimination. Traditionally, such discrimination was rationalized by an attitude of 'romantic paternalism' which, in practical effect, put women, not on a

pedestal, but in a cage. [In a footnote, Thomas Jefferson a man notable for his adherence to democratic principles, is quoted as holding that women should be neither seen nor heard in society's decision-making councils.] * * *

"* * * * *

"As a result of notions such as these, our statute books gradually became laden with gross, stereotyped distinctions between the sexes, * * *." (*Frontiero v. Richardson,* 411 US 677, 93 S Ct 1764, 36 L Ed2d 583, 590 (1973).)

■      The Supreme Court pointed out that the government in its arguments in *Frontiero,* offered no concrete evidence tending to support its views that different preferential treatment in fact saved the government any money and, on the other hand, there was substantial evidence that, if put to the test, many of the spouses of male members failed to qualify for benefits. The court held that any statutory scheme which drew a sharp line between the sexes solely for the purpose of achieving an administrative convenience, necessarily commands "dissimilar treatment for men and women who are similarly situated." This type of arbitrary legislative choice is forbidden by the Constitution.

When Oregon's ORS 307.250 first became law, soldiers and sailors were always male. The situation was radically altered in World War II. Female veterans of the armed forces are fully recognized by ORS 307.250(2) and (3). The statute has no sex distinction in its definition of veteran. The discriminatory aspect occurs on the death of a veteran, leaving a spouse surviving. No scintilla of testimony has been presented to the court which would justify continuing the discrimination between the sexes presently appearing in ORS 307.250(4).

The original statute, Gen Laws (Or) 1921, ch 165, § 1, was a gift by the state of a property tax exemption of $1,000 to "any honorably discharged union soldier or sailor of the Mexican war, the war of the rebellion, or the Indian wars in the state of Oregon, or of the widow remaining unmarried of such soldier or sailor," *after* the military service had been rendered. And this has been true with each amendment made throughout the years, incorporating the names of new wars. The statute's sole purpose originally appears to be an award by the state in recognition of honorable military service rendered by the veteran who owns a homestead in Oregon or

to the widow of such veteran, enacted at a time when there were no veterans' widowers. No means test nor physical disability was required of the widow.

There appears to be no fair or useful reason for the gender discrimination in ORS 307.250(4).[5] It is the opinion of the court that the same law, enacted today, would constitute an unconstitutional discrimination against widowers on the sole basis of sex, in violation of the due process clause of the Fifth Amendment, U. S. Constitution. This federal provision has been imported into the law of Oregon through the Fourteenth Amendment. It is also in violation of the equal protection clause of the Fourteenth Amendment and of Or Const, art I, § 20, the latter requiring that:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

However, this conclusion does not aid the plaintiff. ORS 307.250(4) is void. Neither widows nor widowers are legally entitled to a tax exemption thereunder. The court has no power to restore subsection (4) by inserting the words "or widowers" in the offending sentence.[6] Although the remainder of the statute is unimpaired (ORS 174.040), ORS 174.010 provides:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; * * *."

Amendments to statutes are the prerogative of the Legislative Assembly. The discretion to amend or not to amend is lodged in the legislature, not the courts.

Many taxpayers will be affected by the court's decision in this case. The legislature is now in session and presently has before it seven bills which propose amendments

---

[5] *Cf. Miller v. Oregon,* 208 US 412, 28 S Ct 324, 52 L Ed 551 (1908), which illustrates an acceptable gender discrimination (limiting women to a ten-hour work day).

[6] The federal courts have greater powers. In *Weinberger v. Wiesenfeld,* 420 US 636, 95 S Ct 1225, 43 L Ed2d 514 (1975), the U. S. Supreme Court affirmed a three-judge District Court which had held that the word "widow" must also be read as "widower."

to ORS 307.250; specifically, SB 305, HB 2472, HB 2569, HB 2761, HB 2861, HB 2929 and HB 2990. In the circumstances, notice of this opinion will be brought to the attention of the President of the Senate and of the Speaker of the House.

The plaintiff can take nothing by his complaint and his prayer must be denied. Counsel for defendant shall prepare a form of decree, pursuant to TC Rule 68. Each party shall bear its own costs.