**Charles MILLER, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CV–80–1792.

United States District Court,
E. D. New York.

July 10, 1981.

Charles Miller, pro se.

Edward R. Korman, U. S. Atty., E. D. New York by Jo Davis, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

Plaintiff,[1] Charles Miller, seeks judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") which concluded that the amount payable to the plaintiff as widower's insurance benefits must be reduced to reflect the amount of plaintiff's civil service pension. 42 U.S.C. § 405(g). Plaintiff argues that the Secretary's determination must be reversed insofar as 42 U.S.C. § .402(f)(2), the pension offset provision applicable to widower's insurance benefits, is unconstitutional. Plaintiff contends that the offset provision violates the Equal Protection Clause of the United States Constitution and that the exception to that provision is irrationally underinclusive. The Government moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated herein, the decision of the Secretary is affirmed and the complaint is dismissed.

Plaintiff's wife, a fully insured individual under the Social Security Act, died on November 10, 1977. On July 11, 1978, plaintiff filed an application for widower's insurance benefits. A determination letter dated June 27, 1979 from the Social Security Administration ("Administration") advised the plaintiff that insofar as his pension equaled or exceeded the social security benefits for which he applied, no such benefits were payable. The initial determination was affirmed on reconsideration. Thereafter, a hearing was conducted and the Administrative Law Judge ("ALJ") considered plaintiff's application de novo. At the hearing, the plaintiff attempted to prove that he received one-half support in 1977 from his wife. On the basis of documentary and testimonial evidence, the ALJ found the following: (1) that the claimant's pension exceeded the monthly benefits payable to him as a widower[2]; (2) that the claimant did not receive at least one-half support from his wife; and (3) that the insurance benefits claimed by the plaintiff must be

---

1. Insofar as the petitioner is an attorney, his petition is not judged by the lenient standard generally applied to *pro se* litigants.

2. It is undisputed that the plaintiff was employed by the New York City Government and is being paid a civil service pension based upon his municipal service. Further, effective July, 1978, the plaintiff received a pension of $204.71 per month, while his widower's insurance benefits amounted to $154.80 per month.

totally offset by his civil service pension. Thus, plaintiff's application for widower's insurance benefits was denied.

Section 402(f)(2) of Title 42 of the United States Code provides that the amount of widower's insurance benefits must be reduced by an amount equal to the amount of any periodic benefit payable to such widower which is based upon his earnings while in the service of the Federal or State Government.[3] The operation of the pension offset provision can, however, be circumvented. The provision is not applicable to individuals who were paid or were eligible for a Federal, State or City government pension in December, 1977 through December, 1982 and met the requirements of 42 U.S.C. § 402(f) ("402(f)") as it existed in January of 1977. In January of 1977, section 402(f) contained the requirement that a widower, at the time of his wife's death, must have received at least one-half of his support from the deceased spouse. 42 U.S.C. § 402(f)(1)(D).

Plaintiff contends that the offset provision is violative of the United States Constitution. He argues that the provision deprives him of the equal protection of the law insofar as pensioners in private industry escape any such reduction in their widower's insurance benefits. Further, plaintiff claims that unequal treatment is illustrated by the fact that those public employment pensioners who filed before December of 1977 are not governed by the pension offset provision applicable to widower's insurance benefits.

■ It is well established that under traditional equal protection analysis, a legislative classification must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest. See Matthews v. De Castro, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); Weinberger v. Salfi, 422 U.S. 749, 769, 95 S.Ct. 2452, 2468, 45

L.Ed.2d 522 (1974); Frontiero v. Richardson, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1972); Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Here, insofar as the provision challenged is in the area of social welfare and neither infringes upon a fundamental right nor utilizes classifications that are suspect, the question of constitutionality must be measured by the traditional rational basis standard. See Weinberger v. Salfi, 422 U.S. 749, 769–772, 95 S.Ct. 2457, 2468–70, 45 L.Ed.2d 522 (1975).

■ Under this standard, and based on the legislative history, it was not irrational for Congress to elect that social security benefits payable to surviving spouses be reduced by the amount of any civil service pension also payable to the spouse. Specifically, this court concludes that 42 U.S.C. § 402(f)(2) is rationally calculated to avoid windfall benefits which would have otherwise been payable to government pensioners due to the effect of Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) upon the Social Security Act.[4] See Report of the Committee on Finance, United States Senate, 95th Cong., 1st Sess., Rep.No. 95–572, at 27 (Oct. 29, 1977) ("Finance Report"). See also Duffy v. Harris, [Jan. 1980-Sept. 1980] Unemp.Ins.Rep. (CCH), ¶ 16, 906 (D.N.M.1979). See generally Hudgins v. Harris, [Jan. 1980-Sept. 1980] Unemp.Ins.Rep. (CCH), ¶ 17, 059 (D.Maryland 1980).

Under the social security program, an individual who is entitled to two benefits does not receive the full amount of each benefit. 42 U.S.C. § 402(k) et seq. However, subsequent to Califano v. Goldfarb, supra, and prior to the enactment of 42

---

**3.** The pension offset provision applies to applications filed in December of 1977 or thereafter. Plaintiff filed an application in July of 1978.

**4.** This windfall result was a direct consequence of the United States Supreme Court decision,

Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1970), which declared the dependency requirements of widower's insurance benefits violative of the Fifth Amendment.

U.S.C. § 402(f)(2), persons who received civil service pensions from non-covered employment also collected widow's or widower's insurance benefits in full, regardless of any dependency factor. *Finance Report, supra.* This result was incompatible with the legislative history of widow's and widower's insurance benefits which reflected congressional intention to aid dependent spouses of deceased wage earners. S.Rep. No.1669, 81st Cong., 2d Sess., 28 (1950). *See Califano v. Goldfarb,* 430 U.S. 199, 214–217, 97 S.Ct. 1021, 1030–32, 51 L.Ed.2d 270 (1977). It was also incompatible with the general aim of the social security insurance programs which is designed to prevent public dependency by protecting workers and their families against common economic hazards. H.R.Rep.No.615, 74th Cong., 1st Sess., 1 (1935).

It is thus evident that the offset provision represents congressional intention to prevent duplicative payments and to ensure that an individual's total governmental benefits, including governmental pensions and Social Security payments will not exceed certain levels. In light of the goals of the Social Security insurance program, the power of Congress to fix the level of benefits under the Social Security Act, and the absence of any contractual claim to receive funds from the public treasury, this court cannot say that the action of Congress in enacting 42 U.S.C. § 402(f)(2) is so arbitrary as to violate the Equal Protection clause of the Fifth Amendment. *See generally Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

Indeed, private pensioners whose primary employment was covered by the Social Security Act, are subject to the offset provision of 42 U.S.C. § 402(k), *et seq.* However, prior to the enactment of 42 U.S.C. § 402(f)(2), a spouse who received a government pension based upon his primary employment and was entitled to social security spouses' benefits, escaped the operation of the dual entitlement provision of 42 U.S.C. § 402(k). Thus, the pension offset provision is designed to accomplish the legitimate goal of preventing windfall benefits to a category of claimants by precluding the payment of insurance benefits to those spouses who were receiving benefits regardless of their dependency or their receipt of dual benefit payments.

Accordingly, the pension offset provision must be considered a deliberate and considered choice by Congress and the classification so drawn cannot be deemed arbitrary. Moreover, the provision as enacted is *rationally related to the legitimate* legislative desire to restrict the limited federal resources available where governmental pension and Social Security insurance benefits serve a common purpose. *See generally Schweiker, Secretary Health and Human Services v. Wilson,* —— U.S. ——, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

■ Similarly, the exception provision to the pension offset statute is rationally based and this court is convinced that legitimate reasons justify its enactment. Legislative history indicates that the exception was based upon the reasonable assumption that individuals who were already retired or who would retire shortly after the pension offset was enacted, would not have time to alter their retirement plans to accommodate the absence of a full spouse's benefit.[5] *See*

---

5. Social Security Amendments of 1977, Conference Report No. 95–837, 95th Cong., 1st Sess. reads in pertinent part:

> The House recedes with an amendment which would provide for an exception for certain people who are already receiving pensions based on noncovered public employment (or who would be eligible for such pension within 5 years of the month of enactment) and who could have expected to receive social security benefits as dependents or survivors under the social security law as in effect on January 1, 1977. The managers

> are concerned that there may be large numbers of women, especially widows in their late fifties, who are already drawing pensions, or would be eligible to draw them within 5 years of the date of enactment of this bill, based on their non-covered work and whose retirement income was planned for on the assumption of the availability of full wife's or widow's benefits under social security. Inclusion of this exception to the applicability of the Senate provision, reinforces its prospective nature and avoids penalizing people who are already retired, or

Social Security Amendments of 1977, Conference Report No. 95–837, 95th Cong., 1st Sess., 72.

Certainly, Congress could reasonably take one firm step to remedy a particular hardship imposed by a newly enacted general rule in the social security scheme. *See, e. g., Califano v. Jobst,* 434 U.S. 47, 56–58, 98 S.Ct. 95, 100–01, 54 L.Ed.2d 228 (1977). Here, the exception is rationally based upon the concern for the expectation and reliance interests of those who had retired when, or who would soon retire after, the offset provision became law. Further, the exception is free from invidious discrimination. *See generally Dandridge v. Williams, supra.* Thus, the exception is a legitimate exercise of Congress' power to prescribe the conditions upon which funds shall be dispensed from the public treasury.

■■■ Plaintiff further argues that the pension offset provision is unconstitutional insofar as it encompasses only individuals who applied for benefits in or after December of 1977. This contention must fail in light of 42 U.S.C. § 1304 whereby Congress expressly reserved the right to alter, amend, or repeal any provision of the Social Security Act. Further, it is well established that the Fifth Amendment does not forbid statutory changes "to have a beginning and thus to discriminate between the rights of an earlier and later time." *Sperry & Hutchinson Co. v. Rhodes,* 220 U.S. 502, 505, 31 S.Ct. 490, 491, 55 L.Ed. 561 (1911). *See generally Califano v. Webster,* 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1976).

After examining the record on appeal, including the Secretary's findings, this court finds that the determination of the Secretary is supported by substantial evidence. The ALJ conducted hearings concerning plaintiff's income and one-half support claim, weighed the testimony and documentary evidence, and made credibility findings. Such credibility assessments will not easily be overturned by this court.

close to retirement, from public employment and who cannot be expected to readjust their

*Deyo v. Weinberger,* 406 F.Supp. 968 (S.D. N.Y.1975). In light of the foregoing, this court finds that the pension offset provision is not violative of the United States Constitution, and further, that the decision of the Secretary is affirmed and the complaint is hereby dismissed.

So Ordered.

retirement plans to take account of the "offset" provision that will apply in the future. *Id.* at 72.